**Logan H. BAGBY, Jr., Appellant,**

v.

**Tommy BREDTHAUER, et al., Appellees.**

**No. 13266.**

Court of Appeals of Texas,
Austin.

Dec. 2, 1981.

Roger Hobart Evans, III, Jones, Stephens, Bell & Willey, Houston, for appellant.

William G. Bredthauer, Harris, Finley & Creel, P. C., Fort Worth, for appellees.

POWERS, Justice.

Appellant Logan H. Bagby challenges a summary judgment entered by the district court which orders that he take nothing by his suit against appellees [1] and quiets title in them to a one-sixteenth royalty interest in the minerals lying under appellant's 116 acres of land situated in Lee County, Texas.

Appellant sued appellees to quiet title in himself to the one-sixteenth royalty interest, which he claimed to be his under a regular chain of title to the surface and mineral estates, commencing with a conveyance from the common source of title, A. H. Kuehn and his wife, Frieda. Appellees answered with a general denial, but in their motion for summary judgment asserted title in themselves to the one-sixteenth royalty interest by virtue of inheritance from their ancestors, Henry and Minnie Bredthauer, who once owned title to the land in question and who, in their subsequent conveyance which forms part of appellant's chain of title, reserved therefrom the reversionary interest in the one-sixteenth royalty interest, which estate vested in possession on expiration of the estate reserved by the Kuehns. Responding with his own motion for summary judgment, appellant alleged that the attempted reservation of the royalty interest by Bredthauer was founded upon a springing executory interest declared void by the rule against perpetuities contained in the common law and in Article I, section 26 of the Constitution of Texas, 1876. Disagreeing with appellant's interpretation of the relevant instruments of title, the trial court granted appellees' motion for summary judgment and overruled that of appellant.

Appellant challenges on appeal only the construction given the relevant instruments by the trial court. Finding no error in that construction, we affirm the trial court's judgment.

1. Appellees are Tommy Bredthauer, Henry Bredthauer, Jr., Ona Falke and Connie Storner.

The record reveals that on January 1, 1952, A. H. Kuehn and his wife conveyed approximately 283 acres of land in Lee County to Garwood Gerdes. The conveyance, a deed of general warranty, reads in pertinent part as follows:

"... *save and except,* however, and there is hereby *reserved* unto grantor, A. H. Kuehn, his heirs and assigns, a free royalty interest equal to one-half of the usual one-eighth (¹⁄₁₆) of all of the oil, gas and other minerals in, on and under and that may be produced from the above prescribed premises, for a period of fifteen (15) years from the date hereof, and as long thereafter as oil, gas and other minerals, or either of them, is produced from said land in paying quantities. It being understood however, that Grantor, his heirs, or assigns, shall not be entitled to participate in the bonus money or annual delay rentals paid or to be paid, under any present or future oil, gas and mineral lease on said premises; and upon termination of this *reservation,* the royalty hereby *reserved* shall become *immediately vested in the Grantee,* his heirs or assigns, *without necessity of any further conveyance* whatsoever." (emphasis added)

After acquiring title to the land conveyed by Kuehn, Garwood Gerdes conveyed 116 acres of the land to Henry and Minnie Bredthauer by deed of general warranty dated January 5, 1953. *This conveyance makes no mention of the one-sixteenth royalty interest reserved by Kuehn.*

Shortly after acquiring the land, the Bredthauers conveyed it to Dean M. Ulteig and his wife, making their conveyance expressly "subject to" the one-sixteenth royalty interest reserved by Kuehn. In addition, the Bredthauer conveyance, a deed of general warranty, reserved to them the reversionary interest which followed the Kuehn

royalty interest. The Bredthauer deed, dated April 23, 1955, reads in pertinent part as follows:

"This conveyance is *subject to* the royalty reservation contained in the Deed executed by A. H. Kuehn and wife, Frieda Kuehn, to Garwood Gerdes, dated January 1, 1952, ... to which instrument and the records thereof reference is here made for all purposes, whereby and as a result of which he said A. H. Kuehn and Frieda Kuehn reserved to themselves a free royalty interest equal to one-half of the usual one-eighth (¹⁄₁₆th) of all of the oil, gas and other minerals ... (quoting the remainder of the Kuehn reservation or exception). *Upon the reverter* of the above described royalty reservation it is hereby agreed, and *there is hereby reserved to Grantors, all the reversionary right, title and interest in and to the said royalty reservation* of one-half of the usual one-eighth (¹⁄₁₆th) of all the oil, gas and other minerals in, on and under and that may be produced from said land, in paying quantities, perpetually, *and in fee simple.* Upon the vesting in the Grantors, Henry Bredthauer and Minnie Bredthauer, of the above *reversionary royalty interest* then upon that event there is expressly *reserved to Grantors* herein, and *as a royalty interest only,* from *this* conveyance, the right in Grantors, Henry Bredthauer and Minnie Bredthauer, their heirs and assigns, to receive an undivided one-sixteenth (¹⁄₁₆th) part of all the oil, gas and other minerals which may be mined, produced and saved from the land above described, under such operations as Grantee, their (sic) heirs or assigns, may elect to conduct or permit, exclusively within their judgment and discretion, or under any operations conducted under any present lease...." (emphasis added) [2]

---

**2.** It is apparent that the Bredthauers may not have understood that they were vested in *interest,* with respect to the possibility of reverter, at the time they executed and delivered their deed to Ulteig. This is plainly indicated by the Bredthauers' use of the words "Upon the vesting" in reference to the possibility of reverter.

It is an equal likelihood that the Bredthauer's understood the law perfectly and the distinction between vesting in *interest* and vesting in *possession,* as indicated by their reference to a vesting *in fee simple* upon reversion to them of the Kuehn royalty. We prefer the construction that upholds conveyance of the interest. *Rust*

There have been several conveyances of the 116 acres of land following Bredthauer's conveyance of the land to Ulteig and all such subsequent conveyances were purportedly made subject to the Kuehn and Bredthauer reservations or exceptions. It is represented to us by the parties that none of these intervening grantees claims any interest in the royalty involved in the present case. None of these intervening conveyances which preceded appellant's acquisition of the property by deed of general warranty is contained in the appellate record; however, appellant's allegations concerning such other conveyances are not controverted by appellees. The single issue before us on appeal is whether the attempted reservation by Kuehn for a term of years, and for so long thereafter as production continued in paying quantities, created a future interest in Gerdes, subsequently transferred to Bredthauer, that is void because it contravenes the rule against perpetuities.

▆ The rule against perpetuities provides that "no interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." *Mattern v. Herzog*, 367 S.W.2d 312 (Tex.1963); *Clarke v. Clarke*, 121 Tex. 165, 46 S.W.2d 658 (Tex. Comm'n App.1932, opinion adopted). The rule relates only to the *vesting* of estates and interests and has no bearing upon the duration of the estate or the actual possession of it. *Kelly v. Womack*, 153 Tex. 371, 268 S.W.2d 903 (1954). The rule is not applicable to present or immediate interests, nor is it applicable to those future interests in land which vest *at their creation.* Therefore, vested reversions, possibilities of reverter and remainders are not subject to the rule. The word "vest" refers to an immediate, fixed right of present *or* future enjoyment of the estate or interest, and the estate or interest may vest in interest before it vests in possession. *Hunt v. Carroll*, 157 S.W.2d 429 (Tex.Civ.App.— Beaumont 1941, writ dism'd).

▆▆ The rule against perpetuities is a rule of property and not one of construc-

tion. However, the interpretation of a written instrument or instruments is ordinarily required for application of the rule. Where the instrument is capable of two constructions, one of which will give effect to the whole of the instrument, while the other would defeat it in whole or in part, preference is given to the construction that will uphold the instrument. Reference may be had to the intention of the grantor or testator and if a doubt exists as to that intention, the interest or estate will be held to be vested if reasonably within the language of the instrument. *Rust v. Rust, supra.*

▆ With respect to oil and gas estates or interests, Texas adheres to the "ownership in place" theory and, it is well established, under this theory it is possible for the owner of land to sever the surface and mineral estates, creating a separate corporeal estate in the minerals. The grantor of land may, for example, reserve to himself the entire mineral estate. He may also reserve a distinct and severable part of the mineral estate, including an interest we have denominated a "royalty interest." *Pich v. Lankford*, 157 Tex. 335, 302 S.W.2d 645 (1957); *Benge v. Scharbauer*, 152 Tex. 447, 259 S.W.2d 166 (1953). A "royalty interest" consists in the right to a fractional share of the mineral production, the owner of which typically has no share in the development and executive rights relative to the mineral estate; he may not explore for the minerals himself and is not a necessary party to a lease of the mineral estate. In the ordinary case, he simply possesses the right to his specified proportionate share of production once the minerals are produced. His interest is an interest in "land," but since he may not enter the premises for the purposes of exploration and development, his interest is viewed as an *incorporeal* interest in the land. *Sheffield v. Hogg*, 124 Tex. 290, 77 S.W.2d 1021 (1934).

▆ A landowner may create a royalty interest by grant, reservation or exception. *Humphreys-Mexia Co. v. Gammon,*

*v. Rust,* 147 Tex. 181, 214 S.W.2d 462 (1948);

*Rekdahl v. Long,* 417 S.W.2d 387 (Tex.1967).

113 Tex. 247, 254 S.W. 296 (1923); *State National Bank of Corpus Christi v. Morgan*, 135 Tex. 509, 143 S.W.2d 757 (1940). The *grant* of a royalty interest for a term of years and for so long thereafter as minerals may be produced in paying quantities creates in the grantee a fee simple determinable, and establishes in the grantor a possibility of reverter. Since the rule against perpetuities does not apply to the possibility of reverter, such a grant is unquestionably valid under the rule.

The question arises in the present case, however, whether the possibility of a reverter following a *reservation* or *exception* by a grantor may violate the rule. We see no basis for a distinction.

 Although the terms "reservation" and "exception" have been used interchangeably, they are not synonymous. Technically, a reservation is the creation, by and in behalf of the grantor, of a new right issuing out of the thing granted—something which did not exist as an independent right before the grant, a taking back of a part of the thing already granted. *See Coyne v. Butler*, 396 S.W.2d 474 (Tex.Civ. App.—Corpus Christi 1965, no writ). An exception operates to exclude from the grant some part of the thing granted which would otherwise pass to the grantee, with the whole of the thing granted. An exception does not itself pass title but rather prevents the particular excepted interest from passing with the grant. Title to the interest excepted remains in the grantor by virtue of his *original* title. In *Coyne v. Butler, supra*, the grantor "excepted" the interest in question from his grant. The court held that no new interest was created since no words of reservation were used in the instrument.

In the case before us, we believe a reasonable interpretation to be that Kuehn *reserved* a one-sixteenth royalty for the period of time indicated in the grant, as the emphasized words above indicate, and provided further that upon termination of his royalty interest, it should become immediately vested in Gerdes, Kuehn's grantee, without necessity of any further conveyance beyond that made in that instrument.[3] It is equally obvious that the Bredthauer conveyance expressly reserved to them, their heirs and assigns the possibility of reverter created by Kuehn, which they were entitled to receive because the intervening conveyance by Gerdes conveyed to the Bredthauers, without reservation or exception, the possibility of reverter along with the balance of the surface and mineral estates.

It is said that the more prudent way to retain a defeasible term interest is to use two instruments of conveyance. 2 H. Williams & C. Meyers, Oil and Gas Law § 335 (1981). The grantor should convey all the land outright to his grantee, who should simultaneously convey back to his grantor the defeasible term interest intended to be retained. The original grantor thus retains a possibility of reverter and the original grantee obtains a fee simple determinable.

In the present case, the same result was obviously intended but only one instrument was used to create both the possibility of reverter and the fee simple determinable. As stated by the authors mentioned immediately above, "the law has become hypertechnical, indeed foolish, when it says that the grantor's retained interest is void if reserved in one instrument but good if cre-

---

3. The language which dispenses with the necessity of any further conveyance demonstrates vividly the intention of the parties, Kuehn and Gerdes, to create a fee simple determinable in Kuehn as to the reserved royalty interest, and not a fee simple on condition subsequent, as to that interest. That the royalty interest reserved by Kuehn expires *automatically* with the cessation of production satisfies the controlling test of whether the parties intended a valid fee simple determinable or an invalid fee simple on condition subsequent, under the rule

against perpetuities. Moreover, that the parties provided an *express* reverter of the interest to Gerdes after the cessation of production precludes any necessity for resorting to the intention of the parties. *See*, Moynihan, *Introduction to the Law of Real Property* 99 (1962). There can be no reasonable doubt as to the intention of Kuehn and Gerdes; a fortiori, the trial court could reasonably conclude that the future interest created in Gerdes was valid under the rule as a possibility of reverter. *Id.*

ated by two instruments." *Id.* To avoid that effect, therefore, if only one instrument is used to create both estates, the law *implies* that the grantor conveyed his entire estate in the premises to his grantee, who in turn "re-granted" the defeasible term interest to his grantor. *See Greene v. White*, 137 Tex. 361, 153 S.W.2d 575 (1941); 3 Powell, Real Property 407 (1956) at note 86. Thus, the applicable fiction of a "re-grant" vested Kuehn's entire fee simple estate in Gerdes, who by implication of law "re-granted" the one-sixteenth royalty interest, a defeasible term interest, to Kuehn. Being vested in interest, the possibility of reverter could be, and was, conveyed by Gerdes to Bredthauer by the former's deed to the latter which did not exclude that vested interest from the conveyance.

▆▆▆ Whether created by a fictitious "re-grant" or by a second instrument, the possibility of reverter following a fee simple determinable is valid under the rule against perpetuities. *Caruthers v. Leonard*, 254 S.W. 779 (Tex.Comm'n App.1923, judgmt adopted); 5 Powell, Real Property 769 (1956).

Appellant argues that the Kuehn reservation is material to the case only insofar as it creates a *contingency* which was expressly made a condition precedent to the vesting in interest of the estate attempted to be reserved by Bredthauer; i.e., the Bredthauer future interest in the one-sixteenth royalty could not vest in interest unless and until there was no oil, gas or other mineral being produced from the property in paying quantities. A fee simple on condition subsequent can fall within the rule against perpetuities and be considered void. We disagree, however, with the meaning appellant assigns to the relevant language in the Kuehn conveyance, and the categorization made by appellant based upon that language. The express reverter and automatic termination called for in the Kuehn deed preclude an interpretation that a fee simple on condition subsequent was created and reserved by Kuehn.[4] Rather, Kuehn created and reserved a fee simple determinable that is valid under the rule against perpetuities, followed by a possibility of reverter in Gerdes that was assignable by him to Bredthauer and inheritable by Bredthauer's heirs as a result of his subsequent reservation. Moreover, appellant confuses the two kinds of "vesting": vesting in interest and vesting in possession.

▆▆▆ The time that a future interest vests in *possession* is immaterial under the rule against perpetuities, for the rule is applicable only to the time that a future

---

4. The possibility of reverter created by Kuehn in Gerdes was, of course, created not by grant but by reservation. As to the creation of possibilities of reverter in a grant or devise, Professor Moynihan writes as follows:

It is often difficult to ascertain whether a particular deed or will creates a fee simple determinable or a fee simple on condition subsequent. Whether it is one or the other depends on the intention of the parties. Normally, this intention is sufficiently manifested by the language of the conveyance itself but an ambiguity may be clarified by resort to the circumstances of the transaction. The mode of termination is the controlling test of the parties' intention. Unless an intent is manifested that the estate is to expire automatically on the happening of the stated event the transferee does not have a fee simple determinable. No particular words are necessary to create either a fee simple determinable or a fee on condition subsequent but historically certain words have come to indicate an intent to create one type of estate rather than the other. The words 'while,' 'during,' 'until' or 'so long as' are typical words of special limitation and are usually held to manifest an intent to create a fee simple determinable. The terms 'upon condition that,' 'provided that,' 'but if,' 'if it happen that' are typical words of condition subsequent. Normally, no express words of reverter are necessary to create a determinable fee although the absence of a reverter clause may lead the court to construe the deed as not creating a determinable estate.

Moynihan, *supra*, note 3. It is plain that Kuehn's use of the words "as long thereafter as oil, gas and other minerals, or either of them, is produced from said land in paying quantities," indicate an intent to create a fee simple determinable in himself and his wife. The intent is made conclusive by the associated provisions for automatic termination and reverter to Gerdes on the cessation of production. We see no reason for a different rule applicable to grants and devises, on the one hand, and reservations of the same interest on the other, and none are suggested to us.

interest vests in *interest. Kelly v. Womack, supra.* Once a reversion, possibility of reverter or right of entry is created, that interest is "vested" in interest at the time of its creation. *Caruthers v. Leonard, supra.* By properly classifying the royalty interest *reserved,* as a fee simple determinable estate, and the interest *conveyed* by Kuehn in the same instrument to Gerdes, as a possibility of reverter, the correct application of the rule against perpetuities follows as a matter of course. The possibility of reverter vested in interest immediately on its creation and simultaneous conveyance to Gerdes and it was thereafter susceptible to being further conveyed to Bredthauer.

 A property interest properly classified as a possibility of reverter remains in that category. It may be conveyed or it may descend by inheritance as an interest in property distinct or separate from the royalty interest that it follows. in enjoyment. For example, the owner of a possibility of reverter created under a lease of the mineral estate may convey it to another and that interest indelibly remains a possibility of reverter. *Murphy v. Jamison,* 117 S.W.2d 127 (Tex.Civ.App.—Beaumont 1938, writ ref'd). Moreover, this reversionary interest is included, as it was here, in any conveyance of the land by a deed of general warranty which does not expressly exclude it or reserve it. Such was the effect of the Gerdes deed to Bredthauer. *Jensen v. Wilkinson,* 133 S.W.2d 982 (Tex.Civ.App.—Galveston 1939, writ dism'd judgmt cor.). The subsequent grantee, Bredthauer in this case, was vested with title to the possibility of reverter. *Caruthers v. Leonard, supra,* 254 S.W. at 782.

 We hold, therefore, that the reservation of the one-sixteenth royalty interest by Kuehn created a fee simple determinable in Kuehn and a possibility of reverter in Gerdes. *York v. Kenilworth Oil Co.,* 614 S.W.2d 468 (Tex.Civ.App.—Waco 1981, writ ref'd n. r. e.). When Gerdes conveyed the land to Bredthauer by the former's deed of general warranty which did not exclude or reserve the possibility of reverter, Gerdes conveyed to Bredthauer the possibility of reverter. When Bredthauer expressly reserved the possibility of reverter from his conveyance to Ulteig, in favor of himself, his heirs and assigns, that interest did not pass to Ulteig and could not have been conveyed by a chain of regular conveyances to appellant.

That subsequent conveyances were purportedly made "subject to" the Kuehn and Bredthauers reservations no doubt reflects a desire by such grantors to avoid a breach of their covenants of warranty, but their deeds could not have the effect of conveying something that they did not own, namely the possibility of reverter reserved by Bredthauer. *Cockrell v. Texas Gulf Sulphur Co.,* 157 Tex. .10, 299 S.W.2d 672 (1956).

Appellant relies on *Victory Oil Co. v. Hancock Oil Co.,* 125 Cal.App.2d 222, 270 P.2d 604 (1954) wherein the court declared a reserved interest in oil and gas to be violative of the rule against perpetuities. The grantor had reserved an interest in all oil, gas, hydrocarbons and other minerals for a period of twenty years, and so long thereafter as minerals were produced therefrom. The court declared the reserved interest in grantee was not certain to vest within the permissible period and was therefore in violation of the rule against perpetuities. The court quieted title in the *grantor* to the reserved interest, enlarging his determinable estate into a fee simple estate.

Williams and Meyers point out the uncertainty of the holding in this case. 2 H. Williams & C. Meyers, Oil & Gas Law § 335. These authors note particularly that the court in *Victory Oil* observed that a producing well was situated on the land when the suit was filed, which fact alone would dictate the same result on the basis that the reserved interest could not have expired by its own terms, there being production at that very time. *Id.* Nevertheless, the case does stand for a broader proposition. A serious question is raised, however, with regard to its precedential value even in California. *See Rousselot v. Spanier,* 60 Cal.App.3d 238, 131 Cal.Rptr. 438 (1976), where the court upheld a similar

interest and took pains to point out that reservations for a term of years, and so long thereafter as production continues, did not even invoke the rule against perpetuities. As noted earlier, the controlling test of the interest created is the intention of the parties as reflected in the language used. We find the instruments before us to be conclusive as to the interest created. Moreover, the controlling law of our own jurisdiction is so clear that we would not be permitted to depart from it even if we were inclined to do so by treating *Victory Oil Co.* as persuasive.

The judgment of the trial court is affirmed.