W. Lawrence WALKER & Caroline
P. Walker, Appellants,

v.

B.W. FOSS, Individually; B.W. Foss D/B/A Medina County Gas Co. or Medina Gas Company; Clarke Bingham, Individually; Kenilworth Oil Company, Ltd. F/K/A Kenilworth Oil Company, Appellees.

No. 04–95–00678–CV.

Court of Appeals of Texas,
San Antonio.

Aug. 7, 1996.

Luke C. Kellogg, Dan C. Perry, Perry & Kellogg, L.L.P., Laura H. Burney, San Antonio, for appellant.

Grady B. Jolley, Jolley & Jolley, P.C., Ralph J. Bernsen, Sr., Law Offices of Ralph J. Bernsen, Sr., Gregory Delk, Mark Delk, Delk & Delk, Hondo, for appellee.

Before LÓPEZ, GREEN and DUNCAN, JJ.

## OPINION

GREEN, Justice.

At issue is the ownership of minerals under a certain tract of land. W. Lawrence Walker and Caroline R. Walker ("Walker") filed suit seeking a declaratory judgment regarding ownership of the mineral estate underlying a portion of a tract of land they purchased in Medina County ("Walker Ranch"). B.W. Foss, individually and d/b/a Medina County Gas Company or Medina Gas Company and Kenilworth Oil Company, Ltd., f/k/a Kenilworth Oil Company, generally denied Walker's assertion of ownership. Both Walker and Foss moved for partial summary judgment. The trial court granted Foss's motion for partial summary judgment and denied Walker's first amended motion for partial summary judgment. After the grant of partial summary judgment to Foss, the parties entered into a Rule 11 agreement placing Kenilworth in a position identical to Foss, except that Kenilworth claims the oil and gas rights above 200 feet and Foss claims them below that level. Walker appeals. We reverse the partial summary judgment in favor of Foss and render judgment declaring Walker to be the owner of the oil, gas and other minerals at all depths underlying the property made the subject of this suit.

## BACKGROUND

In 1946, Mame Adams conveyed various parcels of land to her four children, Marjorie, Carleton, Craig, and Jay. Each deed used virtually identical language to effect Mame's wishes, reserving a life estate in the surface and "all the oil and gas in and under" each parcel to herself [1]. The reservation of the oil and gas was to run for five years after the death of Mame and so long thereafter as oil and gas was produced in paying quantities. According to the deed, when the reservation ended all of the oil and gas and the attendant rights vested in the respective grantees.

In 1952, Craig Adams conveyed his interest in the 520.5 acre tract deeded to him by Mame ("Subject Tract") to Hartley E. Howard. Craig conveyed his interest to Howard subject to the reservations in the deed from Mame and also reserved a "1/16 over-riding royalty" to himself.

Mame died April 11, 1953.

In 1954, Marjorie, Carleton, Craig, and Jay partitioned their respective interests in the oil and gas as reserved by Mame in her original deeds to them.

In 1957, Craig and Howard executed a correction deed recharacterizing the 1/16 over-riding royalty as a 1/16 non-participating royalty interest and reserving the referenced interest for 20 years from the date of the original deed, and so long thereafter as oil, gas, and other minerals are being produced in paying quantities. Craig's reserved 1/16th non-participating royalty interest, by its own terms, was not to take effect unless Mame's reservation terminated within twenty years of Craig's deed to Howard.

In 1975, Craig's widow, Mildred C. Adams, sold "all [her] right, title, claim and interest in and to all of the oil, gas, and other minerals in, under, upon and that may be produced" from the Subject Tract. It appears not to be in dispute that Foss and Kenilworth are the successors-in-interest to the parties to whom Mildred conveyed her interest in the oil and gas under the Subject Tract in 1975.

---

1. The minerals, other than oil and gas, are not at    issue in this appeal.

In 1993, Lawrence and Caroline Walker bought Walker Ranch, a 536.7239 acre tract, from the Hartley E. Howard Testamentary Trust, successor to the entire interest of Hartley E. Howard. The Subject Tract constituted 520.5 acres of the total. The balance of the Walker Ranch is comprised of land originally deeded to Jay Adams by his mother in 1946.

The Walkers contend they acquired the surface and all minerals in and under the Walker Ranch by virtue of the 1993 deed from the Howard Trust. Specifically, Walker argues that the references to Mame's reservations in the 1952 deed from Craig to Howard, and in the 1993 deed from the Howard Trust to Walker, were included for the sole purpose of informing the buyers that the property being conveyed was burdened by Mame and her heirs' right to all proceeds from sales of oil and gas from the property until five years after her death and for so long thereafter as oil and gas is being produced in paying quantities.

Conversely, Foss claims that the reference in the 1952 deed to Mame's reservations excluded all interest in the oil and gas under the Subject Tract, including any future interest, from conveyance to Howard, instead reserving them in Craig. According to Foss, because the oil and gas rights were never conveyed to Howard, those rights could not have been conveyed to Walker by the 1993 deed.

## STANDING

■ Both Foss and Kenilworth raise Walker's standing to bring this suit, relying on *Ritchie v. Fort Worth,* 730 S.W.2d 448 (Tex.App.—Fort Worth 1987, writ ref'd n.r.e.) for support. This contention is without merit. First, *Ritchie* found that the property owners seeking declaratory judgment lacked standing to bring suit against the City because their property did not abut the streets and alleys affected by the city ordinance. *Ritchie v. Fort Worth,* 730 S.W.2d at 450. *Ritchie* offers nothing that bears on the situation at hand. Second, and more importantly, the Declaratory Judgment Act specifically authorizes "a person interested under a deed ... [to] have determined

any question of construction or validity arising under the instrument ... and obtain a declaration of rights, status, or other legal relations thereunder." TEX.CIV.PRAC. & REM. CODE ANN. § 37.004 (Vernon 1986). The Walkers clearly have standing to seek clarification of ownership of minerals lying under a tract of land they own, particularly so when the instruments to be construed are in their chain of title.

## ANALYSIS

Walker's first point of error asserts the trial court erred by construing the 1993 deed as conveying only the surface, with no rights in the oil and gas, in the Walker Ranch. To ascertain the effect of the 1993 deed, we must resolve what was conveyed by the prior deeds, starting with the conveyance from Mame to Craig.

We begin with the oft-repeated mantra from *Luckel v. White* mandating that, when interpreting a deed, the intent of the parties is to be determined from the express language found within the four corners of the document. *Luckel v. White,* 819 S.W.2d 459, 461–63 (Tex.1991). Construction of an unambiguous deed is a question of law to be resolved by the Court. *Id.* at 461. We are further instructed to harmonize all parts of the deed, "construing the instrument to give effect to all of its provisions." *Id.* at 462.

### *1946 Deed—Mame Adams to Craig Adams*

In 1946, Mame M. Adams deeded certain parcels of a 2060.82 acre tract in Medina County to her children Marjorie, Carleton, Craig and Jay under identical terms. The only property with which we are concerned here is the 520.5 acre tract deeded to her son, Craig. This is so because it is through Craig that Foss claims an interest in the minerals underlying the Walker Ranch.

Mame reserved unto herself a life estate in the surface of the property and further excepted and reserved to the grantor herein, her heirs, devisees and assigns, all of the oil and gas (but not including any other

minerals) in and under the said premises hereby conveyed.

The deed further specified that the

> reservation of oil and gas ... shall expire at the end of five years from and after the death of the grantor herein if at that time no oil and gas is being produced from any portion of said land in paying quantities. If oil and gas is being produced in paying quantities at the end of five years from the death of the grantor, then this reservation shall expire when said production in paying quantities shall cease. At the time of the expiration of this reservation, in either said event, all of said oil and gas not theretofore removed and all said rights appurtenant thereto shall vest in the above named grantee and his heirs and assigns.

Both Foss and Kenilworth ardently assert that the deeds at issue are unambiguous and should be construed as questions of law by the court. We agree.

The language and effect of the 1946 deed from Mame to Craig is virtually identical to the deed at issue in *Bagby v. Bredthauer*, 627 S.W.2d 190 (Tex.App.—Austin 1981, no writ). In that case, Kuehn conveyed 283 acres of land to Gerdes

> ... *save and except*, however, and there is hereby *reserved* unto grantor, A.H. Kuehn, his heirs and assigns, a free royalty interest ... for a period of fifteen (15) years from the date hereof, and as long thereafter as oil, gas and other minerals, or either of them, is produced from said land in paying quantities ... and upon termination of this *reservation*, the royalty hereby *reserved* shall become *immediately vested in the Grantee*, his heirs or assigns, *without necessity of any further conveyance* whatsoever.

*Id.* at 193 (italics in original). Gerdes then conveyed 116 acres to Bredthauer without mentioning Kuehns' reserved royalty inter-

est. Bredthauer conveyed the land to Ulteig making the conveyance "subject to" Kuehn's reservation, and reserving to himself the reversionary interest which follows Kuehn's royalty reservation.

■ Relying on the language in the deed from Kuehn to Gerdes which indicates that the reserved royalty interest immediately vests in the grantee when the reservation ceases "without necessity of further conveyance," the *Bagby* court held that the deed created a fee simple determinable in Kuehn and the possibility of reverter in Gerdes.[2] *Id.* at 195 & n. 3. While cautioning that using two conveyancing instruments is the recommended method of creating a defeasible term interest in the grantor, the court refused to find that creating both estates in one instrument caused the reversionary interest to be void as violative of the rule against perpetuities. *Id.* *Bagby* explains that when the two estates are created in one document, it is implied that the original grantor "grants" his entire estate to the grantee, who in turn "re-grants" the defeasible term interest intended to be retained by the original grantor. *Id.* The end result is that whether effectuated by one document or two, the future interest created when the grantor reserves a defeasible term interest is valid under the rule against perpetuities. *Id.* (distinguishing between reservations and exceptions); *see* 2 HOWARD R. WILLIAMS & CHARLES J. MEYERS, OIL AND GAS LAW § 335, at 180.6–182, 187 (1995) (explaining the intricacies of the grant/re-grant fiction and the interrelationship and distinction between a reservation and an exception according to common law).

■ Based on the foregoing, we hold that Mame's reservation of "all of the oil and gas" in the 1946 deed to Craig reserved a defeasible term interest to herself as the grantor under the deed, and created a springing ex-

---

**2.** The *Bagby* court refers to the future interest created by the grantor's reservation of a defeasible interest to himself as a possibility of reverter. *Bagby v. Bredthauer*, 627 S.W.2d at 195–98. Nonetheless, our research indicates that the interest created is more properly entitled a "springing executory interest." 2 HOWARD R. WILLIAMS & CHARLES J. MEYERS, OIL AND GAS LAW § 335, at 180.6 (1995). We recognize that the *Bagby* court characterized the future interest created by the grantor's reservation of a defeasible term interest as a possibility of reverter instead of terming it a springing executory interest to sidestep the effect of the rule against perpetuities. Although the rule against perpetuities is not directly at issue here, the Austin court has delineated the interests created by reservation of a defeasible term interest.

ecutory interest (possibility of reverter) in Craig as the grantee. However characterized, Mame reserved an income stream to herself from the oil and gas underlying the property deeded to Craig, leaving him with a reversionary interest which vested in interest at the time the deed was executed.

### 1952 Deed—Craig Adams to Hartley E. Howard

On January 30, 1952, Craig sold his interest in the 520.5 acres to Hartley E. Howard. The deed specified:

[clause one] This conveyance is made *subject to* the reservation of the use of the above described premises, as well as of the rents, issues and profits thereof for and during the natural life of Mame M. Adams as set out in deed recorded in Vol. 134, pages 407–408, Deed Records of Medina County, Texas; *and,*

[clause two] Reservation unto the said Mame M. Adams, her heirs, devisees and assigns, all oil and gas (but not including any other minerals) in and under said land more fully set out in deed recorded on Vol. 134, pages 407–408, Deed Records of Medina County, Texas; and,

[clause three] Reservation of 1/16th overriding royalty for a period of 20 years from date hereof unto the grantor herein. (emphasis added).

█ Foss asserts that the reference to Mame's life estate previously reserved in the surface simply informed Howard that his grant was "subject to" that reservation. Foss seems to argue that reference to Mame's oil and gas reservation somehow creates a new interest reserving all the oil and gas, including Craig's future interest, because the reference to the oil and gas reservation does not contain the "subject to" language contained in the reference to the surface estate or specify a determinable period. In this regard, Foss claims that reference to Mame's oil and gas reservation from the 1946 deed merely describes what is being reserved in the 1952 deed. Last, Foss observes that the third clause intended to reserve a new interest termed a "1/16th overriding royalty."

Kenilworth argues that Craig did not own any rights in the oil and gas to convey to Howard in 1952. Kenilworth contends that in the 1946 deed Mame granted a fee simple interest to Craig and retained a fee simple determinable interest for herself. By extrapolation, one would necessarily infer that Howard was, therefore, unable to convey any interest in the oil and gas to Walker.

For the following reasons, we disagree with both Foss and Kenilworth. A careful reading of the 1952 deed belies Foss's contention that, unlike the surface estate reservation in clause one of the 1952 deed, the reference in clause two of Mame's oil and gas reservation does not contain any "subject to" language. As shown by the italicized language above, the deed to Howard explains that the conveyance is made subject to Mame's reserved life estate in the surface and her reservation of all oil and gas in and under the property granted to Craig.

█ Kenilworth's theory of the interests created by Mame's 1946 oil and gas reservation is self-contradictory. It is not possible to create two fee interests from the same estate as urged by Kenilworth—to attempt to do so is a contradiction in terms. A fee simple, also referred to as fee simple absolute, is an estate over which the owner has unlimited power of disposition in perpetuity without condition or limitation. BLACK'S LAW DICTIONARY 554 (5th Ed.1979). A fee simple determinable is an estate which automatically expires on the happening of a named event. *Id.*

█ The principal function of the "subject to" clause in the conveyance of a mineral interest is to protect the grantor against a claimed breach of warranty. Ernest E. Smith, *The "Subject To" Clause,* 30 ROCKY MTN.MIN.L.INST. 15–1, 15–2 (1985). The term "subject to" when used regarding conveyance of mineral interests has a well-recognized meaning. *Kokernot v. Caldwell,* 231 S.W.2d 528, 531 (Tex.Civ.App.—Dallas 1950, writ ref'd). "Subject to" in its ordinary sense means "limited by" or "subordinate to" and does not have the effect of creating any affirmative rights. *Id.* In conveyances, "subject to" is a term of qualification and does not create new interests. *Id.* The

"subject to" clause limits the estate granted. *Averyt v. Grande, Inc.,* 717 S.W.2d 891, 894 (Tex.1986).

Based on the intent of the parties as expressed in the actual language used in the 1952 deed from Craig to Howard, we find that reference in the 1952 deed to Mame's reservation of the surface for life and to Mame's reservation of all oil and gas simply limits the estate granted to Howard and does not reserve a new interest to Craig. Furthermore, we agree with Foss to the extent that we conclude that the language in the third clause reserving a "1/16th over-riding royalty ... unto the grantor herein" creates a new interest not previously mentioned. Although it is not clear looking only at the 1952 deed what interest Craig intended to create, the language of reservation to the "grantor herein" is unmistakable.[3] The inclusion of the explicit language of reservation in the third clause distinguishes it from the references in clauses one and two to reservations made in a prior deed.

We hold that at the time Craig executed the 1952 deed to Howard, Craig owned the surface estate of the Subject Tract burdened by his mother's right to use the surface for her lifetime, and also owned an interest in the oil and gas which could become possessory at some point in the future, when, and if, Mame's oil and gas reservation terminated. Because Craig conveyed his entire interest in the Subject Tract to Howard, Howard acquired the Subject Tract burdened by the same limitations.

### 1993 Deed—Howard Trust to Walker

■ Walker contends, and no one disputes, that Thomas M. Anderlitch, trustee of the Hartley E. Howard Testamentary Trust, conveyed to the Walkers whatever interest Howard acquired from Craig in 1952. The conveyance from the Trust to Walker listed the following pertinent "Reservations from and Exceptions to Conveyance and warranty":

4. Mineral Reservation reserved in deed dated January 11, 1946, executed by Mame

M. Adams to Craig J. Adams of record in Volume 134, Page 407, Medina County Deed Records....

6. Royalty Reservation reserved in deed of correction dated October 14, 1957, executed by Craig J. Adams to Hartley E. Howard of record in Volume 176, Page 339, Medina County Deed Records.

The granting clause of the 1993 deed states:

Grantors, for the consideration and *subject to* the reservations from and exceptions to conveyance and warranty, grant, sell, and convey to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and hold it to Grantee....

We conclude, based on the reasoning and authority above, that the sixteen reservations and exceptions listed in the 1993 deed limit the estate granted by the Trust to Walker and do not create new interests in the Trust.

### 1954 Partition Deed

As explained below, the 1954 partition deed only affects title to the Subject Tract until Mame's oil and gas reservation expires.

In 1954, after Mame's death the previous year, Marjorie, Carleton, Craig, and Jay partitioned the mineral interest and the reversionary interest retained by Mame arising from the conveyance of a ¼ undivided royalty interest to Adolph Dovre for a ten year period beginning July 24, 1945. The partition called for Marjorie to receive "all of the minerals in and under" that portion of the 2060.82 acres which Mame had deeded to her in 1946 together with the reversionary interest from Dovre pertaining to that tract of land. Carleton, Craig, and Jay agreed to share the entire mineral interest and all reversionary rights under the balance of the 2060.82 acres as tenants in common, each owning an undivided one-third interest, until such time as the oil and gas interest Mame reserved to herself and her heirs ceased to produce in paying quantities. At the point in time when Mame's oil and gas reservation

---

3. It should be noted that the 1957 correction deed between Craig and Howard corrected the misnomer in the original reservation, properly denominating it a "non-participating royalty interest."

ceased, either five years after her death or thereafter when production in paying quantities ceased, the brothers agreed in the partition deed that each would then own only the oil and gas under the particular tract of land deeded to them by Mame in 1946.

Using Marjorie as an example, the partition had the effect of unifying all her estates and interests in the property deeded to her by Mame in 1946 into a fee simple absolute in the surface and the minerals, including the oil and gas originally reserved by Mame. At Mame's death, Marjorie's fee in the surface estate was no longer burdened by Mame's life estate. Regarding the oil and gas, at the execution of Mame's 1946 deed conveying the property to her, Marjorie, like Craig and the other siblings, acquired a springing executory interest in the oil and gas in and under that property, possession of which would vest at some time in the future, either five years after Mame's death or whenever production ceased, whichever was later. As devisees under Mame's will, Marjorie and her brothers received an undivided interest in Mame's oil and gas reservation. The partition deed apportioned Marjorie, Carleton, Craig, and Jay's interest in Mame's oil and gas reservation among themselves.

As noted earlier, the brothers agreed to share an undivided interest in the oil and gas in and under that portion of the 2060.82 acres deeded to them by Mame in 1946. The partition deed severed Marjorie's interest in Mame's reservation from that of her brothers. Marjorie alone was to receive the income derived from the oil and gas produced from the portion of the 2060.82 acres deeded to her by Mame in 1946. The effect of the partition was to vest in Marjorie fee simple absolute title because the surface was no longer burdened by Mame's life estate, and the partitioned right, as Mame's devisee, to the income produced from the oil and gas previously reserved by Mame, together with the reversionary right to possession of the entire mineral estate, including all of the oil and gas, upon the expiration of Mame's reservation, merged all of the estates in the property conveyed to Marjorie in 1946 by Mame.

■ Not so with Craig. At Mame's death, as devisee under her will along with his siblings, Craig received an undivided income interest in Mame's oil and gas reservation underlying her original 2060.82 acre tract. It was that interest alone that the 1954 deed partitioned. Craig had previously conveyed all of his interest in the Subject Tract to Howard prior to his mother's death and execution of the partition deed.[4] Consequently, Craig retained no other interest in the Subject Tract with which his partitioned interest in Mame's reservation could merge.

### 1957 Correction Deed

As previously mentioned, in the 1952 deed to Howard, Craig reserved a "1/16th overriding royalty for a period of 20 years from date hereof." However, an overriding royalty is a royalty interest taken out of the working interest created by an oil and gas lease. BLACK'S LAW DICTIONARY 995 (5th Ed.1979). In 1957, Craig and Howard executed a correction deed to clarify and correctly label the interest reserved by Craig as a non-participating royalty interest. The 1957 correction deed does not impact the issue in this case.

### 1975 Quitclaim Deed—Mildred Adams to Foss's Predecessors

■ To recap, Craig sold all his interest in the Subject Tract to Howard in 1952. At that time because of Mame's life estate in the surface and reservation of the oil and gas, the only interests he could convey were the surface burdened by Mame's right to use and enjoy it during her lifetime and the right of possession of the oil and gas at some time in the future when Mame's reservation expired.

Craig retained a 1/16th royalty interest which would take effect at the termination of Mame's reservation, provided that termination took place within twenty years of the date of Craig's original deed to Howard (i.e.

---

4. We recognize that Craig retained some type of interest on the strength of his reservation of a "1/16th over-riding royalty interest" in his 1952 deed to Howard. However, for purposes of our analysis we will disregard that interest because it has no bearing on the question at issue in this case.

January 30, 1952). Therefore, unless Mame's reservation had terminated prior to January 30, 1972, and oil and gas was being produced in paying quantities on that date, Craig's reserved royalty interest had also expired prior to the 1975 quitclaim deed from Mildred, Craig's widow to Foss's predecessors-in-interest. Nonetheless, the most that Foss could have acquired from Mildred was Craig's non-participating royalty interest. All other interests had been previously conveyed to Howard by virtue of the 1952 deed.

Walker's first point of error is sustained.

### CONCLUSION

In a situation where both parties moved for summary judgment and one motion was granted and the other denied, the appellate court may reverse the judgment of the trial court and render the judgment that should have been rendered below. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). Thus, we reverse the partial summary judgment granted in favor of Foss, and render judgment declaring that W. Lawrence Walker and Caroline R. Walker own the surface and all minerals, including the oil and gas, in the Walker Ranch.

Because our resolution of point number one is dispositive, it is unnecessary for us to address point of error number two.

DUNCAN, J., concurs in the judgment only.