TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00436-CV






Jimmie Luecke and Tex-Lee Drilling & Development Company, Inc., Appellants


v.



Carolyn Kay Wallace, Appellee







FROM THE DISTRICT COURT OF LEE COUNTY, 21ST JUDICIAL DISTRICT


NO. 10,344, HONORABLE HAROLD R. TOWSLEE, JUDGE PRESIDING






 Appellants Jimmie Luecke and Tex-Lee Drilling & Development Company, Inc. challenge
a trial-court judgment declaring that Carolyn Kay Wallace, appellee, has an interest in the oil and gas
royalties and bonuses to a certain 303.055-acre tract of land (the "303-acre tract") owned by Luecke. 
We will affirm the trial court's judgment.


THE CONTROVERSY


 In 1984, Carolyn Wallace (formerly Durrenberger) and John Durrenberger were divorced. 
As part of their property settlement agreement, Wallace executed a deed (the "1984 deed") conveying her
interest in a 303-acre tract of land to Durrenberger. In this deed, however, Wallace reserved (1) an
"undivided one-half (½) non-participating interest in any and all oil, gas and mineral royalties reserved by"
Durrenberger, his heirs, and assigns; and (2) "an undivided one-half interest in any bonus money exceeding
$50.00 per acre received by" Durrenberger, his heirs, and assigns. This reservation forms the basis of this
dispute.

 In 1988, Durrenberger conveyed his interest in the 303 acres to appellant Jimmie Luecke. 
The deed from Durrenberger to Luecke (the "1988 deed") was expressly made subject to Wallace's
reservation.

 Early in 1992, Luecke negotiated an agreement to lease the 303-acre tract to Union Pacific
Resources Company (Union Pacific). Originally, Luecke proposed to lease the 303 acres directly to Union
Pacific in exchange for a 1/5th royalty and a $150 per acre bonus. In performing a title search, however,
Union Pacific discovered Wallace's interest and, in a letter dated April 28, 1992, informed Luecke that,
with respect to Wallace's interest, he must provide Union Pacific with "evidence of payment of ½ of excess
bonus money above $50.00 per acre and a Ratification and Rental Division Order setting forth the interest
division."

 Two days after receiving this letter, Luecke and Union Pacific closed the lease agreement;
however, at Luecke's request, the structure of the transaction was changed. First, Luecke leased the 303-acre tract to appellant Tex-Lee Drilling & Development Company (Tex-Lee) for a 1/8th royalty and "less
than $50.00 per acre" bonus. (1) Luecke was the president and sole owner of Tex-Lee. Tex-Lee then sold
its lease to Union Pacific for the $150.00 per acre bonus and an overriding 1/5th royalty. (2) According to
a representative of Union Pacific, at the closing of the lease agreement, Luecke orally represented that he
had contacted Wallace and she was "on board" with the lease of the 303 acres.

 Wallace was not, however, "on board" with Luecke's lease. Indeed, according to
Wallace, at the time of the closing, she had not been contacted about the lease. Only after the closing did
Luecke send representatives to contact Wallace. Initially, Luecke attempted to purchase Wallace's interest
in the 303-acre tract; then, when Wallace refused to sell, he unsuccessfully tried to get Wallace to sign a
stipulation of her interest in the 303 acres.

 On the day after the closing, Union Pacific paid Tex-Lee a $150 per acre bonus for the
303-acre tract. (3) Five days later, Tex-Lee paid Luecke this same amount. Luecke did not, however, pay
or attempt to pay Wallace anything.

 Wallace brought this lawsuit for declaratory judgment of the parties' rights and duties and
for Luecke's breach of duty to Wallace. Wallace alleged that, in the deed by which she transferred the 303
acres to Durrenberger, she reserved (1) a ½ nonparticipating royalty interest and (2) ½ of all bonuses in
excess of $50. She contends Luecke knew of this reservation and intentionally structured the lease to avoid
paying her the royalties and bonus payments she was due. Further, Wallace alleged that Luecke, as owner
of the executive rights to the 303-acre tract, owed her a duty of "utmost good faith and fair dealing." (4) She
argues that Luecke breached this duty when he leased the tract to Tex-Lee for a bonus and royalty that
were below market value.

 The trial court granted Wallace's two motions for partial summary judgment. In the first
partial summary judgment, the trial court declared that "Wallace is a non-participating royalty interest owner
in the [303-acre] tract . . . ." In the second partial summary judgment, the court found as a matter of law
that: (1) Luecke held Wallace's executive rights in the 303-acre tract when he executed the lease to Tex-Lee; (2) Luecke owed Wallace "a duty to obtain for her every benefit . . . Luecke obtained for himself or
his wholly owned and controlled Corporation, Tex-Lee"; (3) Wallace was entitled to "her share of the
additional royalty . . . over $50.00 per acre received by" Luecke and Tex-Lee; and (4) Wallace was
entitled to reasonable attorney's fees.

 The court then held a trial on the merits to determine Wallace's damages and whether
Wallace was entitled to receive exemplary damages. After the trial, the court entered its final judgment,
awarding Wallace $15,153 in actual damages, $6,647 in prejudgment interest, $25,000 in exemplary
damages, and a total of $107,500 in attorney's fees. (5)

 Luecke and Tex-Lee appeal, complaining that: (1) the trial court misconstrued the
reservation in the 1984 deed and, therefore, erred in granting Wallace's motions for partial summary
judgment; (2) the trial court denied Luecke and Tex-Lee due process of law by filing findings of fact
concerning issues of liability following the bench trial when the court had already determined liability as a
matter of law by partial summary judgment; (3) the trial court erred by awarding exemplary damages when
there was no evidence to support an award of exemplary damages. Luecke and Tex-Lee also challenge
the factual and legal sufficiency of the evidence supporting the amount of punitive damages awarded
Wallace. Finally they contend that the trial court's award of attorney's fees is excessive.


DISCUSSION


Summary Judgment

 In their first two points of error, Luecke and Tex-Lee challenge the trial court's partial
summary judgments. We review the trial court's summary judgment de novo. In performing our review
we must determine whether Wallace met her burden of showing that no genuine issue of material fact exists
and that she is entitled to judgment as a matter of law. We will accept as true all evidence favorable to
Luecke and Tex-Lee, and indulge every reasonable inference and resolve every doubt in their favor. See
Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). The partial summary
judgments construing Wallace's reservation in the 1984 deed are based on uncontroverted facts and
present only questions of law. We must, therefore, determine whether the trial court correctly concluded
that the reservation is unambiguous and reached a proper legal conclusion as to its content. See Myers v.
Gulf Coast Minerals Management Corp., 361 S.W.2d 193, 196 (Tex. 1962); Asset Restructuring
Fund, L.P. v. Liberty Nat'l Bank, 886 S.W.2d 548, 550 (Tex. App.--Austin 1994, writ denied).


Reservation Unambiguous and Does Not Violate Rule Against Perpetuities.

 Luecke and Tex-Lee contend the trial court erred in granting Wallace's partial summary
judgments because her reservation in the 1984 deed is either ambiguous or, in the alternative, void because
it violates the rule against perpetuities. In making their arguments, Luecke and Tex-Lee focus on what they
call "awkward language" in the reservation.

 The language of the reservation reads as follows:


There is hereby reserved unto Grantor [Wallace], her heirs and assigns, an undivided one-half (½) non-participating interest in any and all oil, gas and mineral royalties reserved by
Grantee [Durrenberger], his heirs and assigns at any time in the future and which
may be payable to Grantee, his heirs and assigns under any future lease of the
property, and there is hereby reserved unto Grantor her heirs and assigns an undivided
one-half interest in any bonus money exceeding $50.00 per acre received by Grantee, his
heirs and assigns for the lease of the property. 


(Emphasis added.)

 Specifically, Luecke and Tex-Lee contend that the clause emphasized above renders the
reservation ambiguous or void. First, they argue that this language makes Wallace's interest in the 303
acres contingent upon Durrenberger reserving some interest in the tract when he conveyed it to Luecke. 
Because Durrenberger made no such reservation when he sold the 303 acres to Luecke, they contend that
Wallace has no further interest in the property. Wallace's interest is not, however, contingent upon a
reservation by Durrenberger. The reservation in the 1984 deed states that Wallace has a royalty interest
in any royalties reserved by Durrenberger, his heirs and assigns. The word "assigns" includes those
individuals who take property "either immediately or remotely from or under the assignor, whether by
conveyance, devise, descent, or act of law." Black's Law Dictionary 119 (6th ed. 1990) (emphasis
added). Because Durrenberger conveyed the 303-acre tract to Luecke, Luecke is an assign of
Durrenberger. Id; see also Barstow v. State, 742 S.W.2d 495, 499-500 (Tex. App.--Austin 1987, writ
denied) (construing the word "assigns" to include those who take real property by grant); Neeley v.
Intercity Management Corp., 623 S.W.2d 942, 951 (Tex. App.--Houston [1st Dist.] 1981, no writ)
("The word 'assign' is tantamount to the word 'grant', which is an operative word of conveyance."). 
Although Tex-Lee did not acquire its interest in the 303-acre tract directly from Durrenberger, it did
acquire it through Luecke and therefore it is also an assign of Durrenberger. Id. Because Luecke and Tex-Lee are Durrenberger's assigns, by the plain language of the reservation, Wallace retained her royalty
interest even after Durrenberger sold the 303-acre tract without reserving any interest.

 Next, Luecke and Tex-Lee argue the deed is ambiguous as to the type and amount of
interest reserved by Wallace. In order to ascertain Wallace's interest in the 303-acre tract, we look to the
plain language of the reservation to determine whether it is ambiguous or not. The 1984 deed states that
Wallace reserved an "interest in any and all oil, gas and mineral royalties . . . ." We believe this to be a
clear reservation of a royalty interest. Furthermore, the deed defines the amount of Wallace's royalty
interest as an "undivided one-half . . . interest in any . . . royalties reserved by Grantee [Durrenberger], his
heirs and assigns . . . ." The only reasonable interpretation of this language is that Wallace reserved an
interest in one-half of any royalties reserved by Durrenberger, his heirs, or assigns. We therefore hold that
the 1984 deed is unambiguous as to the type and amount of interest Wallace reserved. (6)

 Finally, Luecke and Tex-Lee contend that the phrases "reserved . . . at any time in the
future" and "which may be payable . . . under any future lease of the property" cause Wallace's reservation
to violate the rule against perpetuities. They argue that, at best, the reservation is ambiguous as to when
the royalty interest vested.

 A grantor may reserve interests in royalties, bonuses, and rentals. Schlittler v. Smith, 101
S.W.2d 543, 544 (Tex. 1937); see also Bagby v. Bredthauer, 627 S.W.2d 190, 194 (Tex.
App.--Austin 1981, no writ). Royalty interests are regarded as incorporeal interests in real property. 
Haile v. Holtzclaw, 414 S.W.2d 916, 923 (Tex. 1967). As such, a grantor may reserve a royalty interest
prior to any lease for oil and gas purposes. Watkins v. Slaughter, 189 S.W.2d 699, 700 (Tex. 1945);
Barker v. Levy, 507 S.W.2d 613, 617 (Tex. Civ. App--Houston [14th Dist.] 1974, writ ref'd n.r.e.)
("[T]here is no requirement in Texas law that a lease be in effect before a royalty interest can be created.").

 Royalty interests, like all interests in real property, are subject to the rule against
perpetuities. See Peveto v. Starkey, 645 S.W.2d 770, 772 (Tex. 1982); Bagby, 627 S.W.2d at 194-95. 
Thus, a royalty interest is not valid unless it must vest, if at all, not later than twenty-one years after some
life in being at the creation of the interest. Bagby, 627 S.W.2d at 194, 196-97.


The rule relates only to the vesting of estates and interests and has no bearing on the
duration of the estate or the actual possession of it. . . . The rule is not applicable to
present or immediate interests, nor is it applicable to those future interests in land which
vest at their creation."



Id. at 194 (citation omitted). Therefore, so long as Wallace's royalty interest was a present interest or a
future interest that vested upon execution of the 1984 deed, it does not violate the rule against perpetuities. 
See id.

 Luecke and Tex-Lee argue, however, that the clauses beginning "in the future" and "which
may be payable . . . under any future lease" prevents Wallace's royalty interest from vesting until
Durrenberger, his heirs, or assigns execute a lease in which they reserve for themselves a bonus and/or
royalty interest. We disagree.

 By definition, a royalty interest is an interest in a share of the future product or profit from
an oil and gas lease. Griffith v. Taylor, 291 S.W.2d 673, 676 (Tex. 1956); Black's Law Dictionary
1330-31 (6th ed. 1990). Thus, neither oil and gas production nor the existence of an oil and gas lease are
necessary for a royalty interest to be a vested, present interest (i.e., a fee simple interest in royalties). All
that is necessary is for the royalty-interest owner to have a present right to a share of future production.

 The language of the 1984 deed indicates that Wallace reserved such a right. She did not
reserve an executory interest or a fee simple determinable; (7) rather, she kept a fee simple absolute interest
in one-half of any future royalties reserved by Durrenberger, his heirs, or assigns. Wallace's royalty interest
is not contingent upon a future lease. The "future" language in the reservation merely defines the amount
of interest Wallace owns and reflects that Wallace cannot receive her share of royalties until a lease is
executed and oil, gas, or minerals are produced from the 303-acre tract. Appellants contend that Peveto
v. Starkey, 645 S.W.2d 770 (Tex. 1982), is controlling, and therefore, Wallace's reservation violates the
rule against perpetuities. Peveto is, however, distinguishable because the deed in Peveto contained a
clause stating "'this grant shall become effective only upon the expiration of [Peveto's] . . . Deed . . . .'"
Id. at 772. By its plain language, the grant contained in that deed could not vest until an uncertain future
event took place. Wallace's reservation contained no such language. Furthermore, the Peveto grant
concerned the conveyance of a right of reverter in a royalty interest. As already noted, this case concerns
the reservation of a fee simple in a royalty interest. We hold that, under the unambiguous terms of the 1984
deed, Wallace's reservation vested immediately upon the deed's execution. It does not, therefore, violate
the rule against perpetuities.


Breach of Duty of Utmost Good Faith and Fair Dealing.

 Luecke and Tex-Lee also argue that the trial court erred by granting partial summary
judgment that Luecke, as holder of the executive right to the 303-acre tract, breached a "duty of utmost
faith and fair dealing to Wallace." As noted above, the trial court's summary judgment declared that
Luecke owed Wallace "a duty to obtain for her every benefit [he] obtained for himself or [Tex-Lee]."

 An executive owes nonparticipating royalty interest owners a duty of utmost good faith. 
Manges v. Guerra, 673 S.W.2d 180, 183 (Tex. 1984). This duty is a fiduciary duty arising from the
relationship of the parties and not from contract. Id. The "duty requires the holder of the executive right
. . . to acquire for the non-executive every benefit that he exacts for himself." Id.

 Luecke and Tex-Lee argue that, to establish a breach of this duty on summary judgment,
Wallace would have had to establish that she could have made a better deal than the one-eighth royalty
and the less than fifty dollar per acre bonus that Luecke received from Tex-Lee. We disagree. Wallace
only needed to establish that Luecke obtained benefits for himself that he did not obtain for Wallace. The
undisputed summary judgment evidence establishes the following: (1) Union Pacific offered to lease the
303-acre tract from Luecke for a one-fifth royalty and $150 per acre bonus; (2) Luekce restructured the
transaction so that Tex-Lee would receive the $150 per acre bonus and one-fifth royalty and Luecke
individually would only receive from Tex-Lee a one-eighth royalty and less than $50 per acre bonus; and
(3) Luecke received from Tex-Lee all of the bonus money Tex-Lee received from Union Pacific. Clearly,
the lease from Luecke to his captive corporation, Tex-Lee, was a sham transaction entered into for the sole
purpose of depriving Wallace of her full interest. This evidence establishes as a matter of law that Luekce,
as owner of the executive right, did not obtain for Wallace every benefit he obtained for himself.

 The trial court did not err in granting Wallace partial summary judgments because (1) it
properly construed the unambiguous reservation in the 1984 deed and (2) it correctly concluded that
Luecke breached the fiduciary duty he owed Wallace. Accordingly, we overrule Luecke and Tex-Lee's
first two points of error.


Due Process of Law


 In their third and fourth points of error, Luecke and Tex-Lee contend that they were denied
due process of law because the trial court revisited issues of liability at trial after it had already determined
liability in its partial summary judgment. They argue that the two orders granting partial summary judgment
left only the amount of damages, amount of attorney's fees, and any entitlement to exemplary damages in
dispute. In reviewing the record of the trial, we find that these were indeed the only issues tried before the
court. Luecke and Tex-Lee point out, however, that the trial court's final judgment superceded and
replaced its previous partial summary judgments. They further note that the trial court then filed findings
of fact pertaining to issues of liability. They complain that the trial court, therefore, revisited issues of liability
at trial without giving them notice. Luecke and Tex-Lee contend that they were harmed by the trial court's
actions because appellate review of the trial court's liability findings should only be upon a summary
judgment standard of review rather than a sufficiency of the evidence review.

 Luecke and Tex-Lee cite two supreme court cases to support their argument that the trial
court's findings of fact denied them due process and constituted reversible error. See Bi-Ed, Ltd. v.
Ramsey, 935 S.W.2d 122 (Tex. 1996); Elder Construction, Inc. v. City of Colleyville, 839 S.W.2d
91 (Tex. 1992). These cases are distinguishable. In these cases, each trial court entered a partial summary
judgment, held a jury trial to decide the remaining issues, and after the trial, rescinded the partial summary
judgment. Each jury then revisited the issues already decided on summary judgment and reached findings
contradictory to those on summary judgment. In this case, the trial was not before a jury and the trial
court's final judgment was consistent with the previous partial summary judgments. We hold that the trial
court did not revisit issues of liability at trial.

 The trial court's final judgment is consistent with its orders granting partial summary
judgment. Although some of the trial court's findings of fact do address liability issues, Luecke and Tex-Lee were not denied due process of law. The trial court did not hear evidence pertaining to liability issues
during the trial on the merits. We regard those findings of fact that address Luecke and Tex-Lee's liability
as surplusage. We have already reviewed and denied their challenge to these liability issues under a
summary-judgment standard of review. (8) We overrule appellants' third and fourth points of error.


Exemplary Damages


 In three points of error, Luecke and Tex-Lee challenge the trial court's $25,000 exemplary
damage award. Specifically, they contend both that there is no evidence to support an award of exemplary
damages and that there is factually insufficient evidence to support the amount of damages awarded.



Legal Sufficiency: Award of Exemplary Damages Appropriate.

 In their fifth (9) and sixth points of error, Luecke and Tex-Lee contend there is no evidence
to support the trial court's award of exemplary damages. The holder of a nonparticipating royalty interest
may recover exemplary damages from the holder of the executive right for the breach of the duty of utmost
good faith. See Manges v. Guerra, 673 S.W.2d 180, 184 (Tex. 1984) (the breach of the duty of utmost
good faith is a breach of fiduciary duty; a beneficiary harmed by a breaching fiduciary may recover
exemplary damages). An award of exemplary damages for the executive's breach of that duty will be
upheld so long as the breach was intentional, malicious, fraudulent, or grossly negligent. See id. at 184-85;
cf. Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 17-18 (Tex. 1994) (to recover exemplary
damages in an insurance dispute, insured must establish bad faith and intentional, malicious, fraudulent, or
grossly negligent conduct).

 As determined above, Wallace established as a matter of law that Luecke breached the
duty of utmost good faith that he owed to her. After a trial to determine whether Wallace was entitled to
recover exemplary damages, the trial court found that Luecke's breach of this duty "was done knowingly
and willfully, with the intent to deprive Wallace of benefits Luecke knew, or had reason to know, Wallace
was entitled to share." (10) This finding that Luecke intentionally breached the duty of utmost good faith will
support an award of exemplary damages. See Manges, 673 S.W.2d at 184; see also Moriel, 879
S.W.2d at 17. We must therefore determine whether this finding is supported by legally sufficient evidence.

 In deciding this legal sufficiency point, we must consider only the evidence and inferences
tending to support the trial court's finding and disregard all evidence and inferences to the contrary. 
Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995); Best v. Ryan Auto Group, Inc.,
786 S.W.2d 670, 671 (Tex. 1990). We will uphold the finding if more than a scintilla of evidence supports
it. Crye, 907 S.W.2d at 499; Seideneck v. Cal Bayreuther Assocs., 451 S.W.2d 752, 755 (Tex. 1970);
In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951). The evidence supporting a finding amounts to
more than a scintilla if reasonable minds could differ in their conclusions. Crye, 907 S.W.2d at 499;
Moriel, 879 S.W.2d at 25. See generally William Powers, Jr. & Jack Ratliff, Another Look at "No
Evidence" and "Insufficient Evidence," 69 Tex. L. Rev. 515 (1991); Michol O'Connor, Appealing
Jury Findings, 12 Hous. L. Rev. 65 (1974).

 Luecke argues that the evidence established he had a good faith belief that Wallace had no
interest in the 303-acre tract and, therefore, there was no evidence to support the trial court's finding. After
reviewing the record, however, we find ample evidence to support a finding that Luecke knew of Wallace's
interest and intentionally sought to deprive her of that interest. As previously mentioned, there is evidence
that Luecke originally planned to lease the 303-acre tract directly to Union Pacific for a one-fifth royalty
and $150 per acre bonus. Union Pacific then notified Luecke of Wallace's reservation. Within two days
of receiving this notice, Luecke restructured the lease of the 303-acre tract. This restructuring deprived
Wallace of any bonus payments and minimized her share of royalty payments; at the same time, the
restructuring increased Luecke's share of bonus and royalty payments. Testimony in the record indicates
that Luecke falsely told Union Pacific's representatives that Wallace was "on board" with the lease of the
303-acre tract. Furthermore, there is evidence that, subsequent to his lease of the 303-acre tract, Luecke
attempted to buy Wallace's interest. When Wallace refused to sell, Luecke attempted to get Wallace to
sign a stipulation of interest. More than a scintilla of evidence supports the trial court's award of exemplary
damages. See Crye, 907 S.W.2d at 499; Moriel, 879 S.W.2d at 25. The trial court could, therefore,
reasonably conclude that Luecke knew of Wallace's interest and intentionally sought to deprive her of it. 
The trial court's award of exemplary damages is supported by legally sufficient evidence.


Factual Sufficiency: Amount of Exemplary Damages Reasonable.

 In their seventh point of error, Luecke and Tex-Lee challenge the factual sufficiency of the
evidence supporting the trial court's exemplary damage award. To determine whether the trial court's
exemplary damage award is supported by factually sufficient evidence, we must consider and weigh all the
evidence and should set aside the award only if it is so contrary to the overwhelming weight of the evidence
as to be clearly wrong and unjust. See Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re King's
Estate, 244 S.W.2d at 661; see also Moriel, 879 S.W.2d at 30; Pool v. Ford Motor Co., 715 S.W.2d
629, 635 (Tex. 1986). We should consider in our assessment the following (Kraus) factors:


(1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of
culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and
(5) the extent to which such conduct offends a public sense of justice and propriety.



Alamo Nat'l Bank v. Kraus, 616 S.W.2d 908, 910 (Tex. 1981).

 Having already reviewed the evidence supporting the trial court's exemplary damage award,
we must now consider the evidence supporting Luecke's contention that he, in good faith, believed Wallace
had no interest in the 303-acre tract and, therefore, did not intend to deprive Wallace of her interest. The
record contains a title opinion prepared by Jake Jacobson, an agent of Union Pacific. The title opinion calls
Wallace's reservation "ambiguous" and indicates that Wallace may have no royalty interest in the 303-acre
tract. Luecke contends that he relied on this opinion and, in good faith, believed Wallace had no interest
in the tract. (11) Luecke also relies on information contained in an ex parte letter that he wrote to the trial court
judge as evidence that he believed Wallace had no interest in the tract. In the letter Luecke mentions the
names of several individuals who told him that "Wallace's interest, if any, had terminated." (12) Considering
all of the evidence, we cannot say the trial court's finding that Luecke knew of Wallace's interest was so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

 We must now analyze all of the evidence in light of the Kraus factors to determine whether
the trial court's award of $25,000 in exemplary damages is reasonable. The evidence establishes that, for
his own personal gain, Luecke intentionally breached his fiduciary duty to Wallace. It further establishes that
he knew that his actions would deprive Wallace of her bonus interest and substantially reduce the amount
of royalties she would receive from production on the 303-acre tract.

 Wallace, as a nonparticipating royalty interest owner, had no right to participate in the
execution of any lease of the 303-acre tract. She was, therefore, dependent upon Luecke, the holder of
the executive right, to procure a fair lease of that tract. It is because of this relationship that Luecke owed
Wallace a fiduciary duty "to acquire for Wallace every benefit that he exact[ed] for himself." Manges, 673
S.W.2d at 183. Instead of fulfilling his fiduciary obligation to Wallace, Luecke leased the property to Tex-Lee, his wholly owned corporation, for a small bonus and royalty. One day later, Tex-Lee leased the same
property for a significantly larger bonus and royalty. Luecke, as the sole owner of Tex-Lee, received the
benefit of this second transaction; but Wallace did not. We believe that this is the type of intentional self-dealing that punitive damages are meant to punish and deter. In light of the Kraus factors and the trial
court's award of $15,153 in actual damages, we hold that the trial court's $25,000 exemplary damage
award is supported by the evidence; indeed, the evidence would have supported even higher exemplary
damages.

 Having determined that the evidence is legally and factually sufficient to support the trial
court's $25,000 exemplary damage award, we overrule appellants' fifth, sixth, and seventh points of error.


Attorney's Fees


 In their eighth point of error, Luecke and Tex-Lee contend that the trial court's award of
attorney's fees is excessive. The trial court awarded Wallace $52,500 in attorney's fees for the trial of this
case. It further awarded her up to $55,000 in attorney's fees in the event of successive appeals.

 An award of attorney's fees rests in the sound discretion of the trial court, and its judgment
will not be reversed absent a clear showing that it abused its discretion. City of Austin v. Janowski, 825
S.W.2d 786, 788 (Tex. App.--Austin 1992, no writ). A trial court abuses its discretion only when it acts
in an unreasonable and arbitrary manner, or when it acts without reference to any guiding principles. 
Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991); Downer v. Aquamarine Operators,
Inc. 701 S.W.2d 238, 241-42 (Tex. 1985).

 There is evidence in the record that Wallace's attorneys were hired on an hourly basis. 
Wallace's trial attorney testified as to the amount of time that he and other attorneys spent working on the
case, the hourly rates charged by those attorneys, and the reasonableness of the time spent and rate charged. 
He estimated that $52,500 would be a reasonable fee for the trial of the case. Wallace's attorney also gave
an estimate of reasonable attorney's fees should Luecke and Tex-Lee appeal this case. His estimate
matched the trial court's award of appellate attorney's fees. Luecke and Tex-Lee neither objected to nor
controverted this testimony. We cannot say that the trial court abused its discretion and, therefore, we
overrule appellants' eighth point of error.


CONCLUSION


 Having found no error, we affirm the trial court's judgment.



 

 Mack Kidd, Justice

Before Justices Powers, Jones and Kidd

Affirmed

Filed: August 28, 1997

Publish

1. In an affidavit dated the day before the closing, Luecke swore that the bonus he received from
Tex-Lee "was less than $50.00 per acre and therefore [was] not affected by [Wallace's] reservation." We
cannot tell from the lease what the actual bonus was; we will accept the "less than $50.00 per acre" amount
contained in Luecke and Tex-Lee's brief.
2. Under the terms of the sale, Tex-Lee would receive the 1/5th overriding royalty less any "existing
burdens." Thus, Luecke would receive a 1/8th royalty outright, and Tex-Lee, Luecke's wholly owned
corporation, would receive the remainder of the 1/5th royalty.
3. The lease between Union Pacific and Tex-Lee involved other tracts of land in addition to the 303
acres. In addition to the bonus paid for the 303-acre tract, Union Pacific paid a $150 per acre bonus for
these other tracts. Thus, Union Pacific paid Tex-Lee a total bonus of $177,583.50. Because the other
tracts are not part of this appeal, we will discuss only the 303 acres.
4. Wallace contends that, because Luecke leased the 303-acre tract to his solely owned company,
he was engaging in self-dealing and owed her a fiduciary duty.
5. The court's judgment awarded Wallace attorney's fees in the amount of $52,500 for the trial of
the case, $25,000 if the case is appealed to this Court, $15,000 if an application for writ of error is filed
with the Supreme Court of Texas, and $15,000 if a writ of error is accepted by the supreme court.
6. In the 1984 deed, Wallace also clearly reserved a one-half interest in all bonus payments in
excess of $50.
7. A fee simple determinable and the possibility of a reverter that accompanies it are both interests
that vest immediately upon their creation. Bagby, 627 S.W.2d at 196-97. Because there is no provision
in Wallace's reservation for the possibility of reverter, she does not have a fee simple determinable.
8. As noted above, Luecke and Tex-Lee were on notice that the trial would address damages,
attorneys fees, and entitlement to exemplary damages. Thus, findings of fact concerning these issues could
not violate their due process rights.
9. Appellants' fifth point of error contends that the trial court erred in "holding that the Moriel
standards for 'some evidence' to support punitive or exemplary damages do not apply" in this case. The
trial court made no such holding. Instead, the court made findings consistent with its award of exemplary
damages. We must, therefore, determine whether these findings are supported by legally sufficient
evidence.
10. Furthermore, the court found that "Luecke had subjective awareness of Wallace's interests and
entitlement, but acted with conscious indifference to Wallace's rights."
11. The title opinion was not completed until March of 1993, almost a year after Luecke and Tex-Lee entered into their lease of the 303-acre tract. The evidence indicates, however, that the title opinion
work may have been in existence at the time of the lease.
12. Luecke mentions John Durrenberger in the letter as being one of the individuals who told him
that Wallace had no interest in the 303-acre tract. At trial, Durrenberger testified that he never told Luecke
this.


mated that $52,500 would be a reasonable fee for the trial of the case. Wallace's attorney also gave
an estimate of reasonable attorney's fees should Luecke and Tex-Lee appeal this case. His estimate
matched the trial court's award of appellate attorney's fees. Luecke and Tex-Lee neither objected to nor
controverted this testimony. We cannot say that the trial court abused its discretion and, therefore, we
overrule appellants' eighth point of error.


CONCLUSION


 Having found no error, we affirm the trial court's judgment.



 

 Mack Kidd, Justice

Before Justices Powers, Jones and Kidd

Affirmed

Filed: August 28, 1997

Publish

1. In an affidavit dated the day before the closing, Luecke swore that the bonus he received from
Tex-Lee "was less than $50.00 per acre and therefore [was] not affected by [Wallace'