

# NUMBER 13-15-00454-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**HAYWOOD WI UNITS, LTD,**                           **Appellant,**

**v.**

**B&S DUNAGAN INVESTMENTS, LTD, ET AL.,**         **Appellees.**

## On appeal from the 253rd District Court of Liberty County, Texas.[1]

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Contreras and Benavides
### Memorandum Opinion by Chief Justice Valdez

Appellant, Haywood WI Units, Ltd. ("Haywood"), appeals from a summary judgment

rendered in favor of appellees, B & S Dunagan Investments, Ltd., James A. Dunagan III,

Kathleen Dunagan, Blue Eyes, Ltd., Joseph Willis Hudson Sr., Garrow H. Crowley a/k/a

Elsa Garrow Hudson Crawley, Joseph Willis Hudson Jr., Charles Albert Zipp III, Sailin'

---

[1] This case is before the Court on transfer from the Ninth Court of Appeals in Beaumont pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2017 1st C.S.).

Shoes, Ltd., Robert von Weise Zipp (collectively the "Willis Heirs"), Crimson Exploration Inc., and Crimson Exploration Operating Inc. (collectively "Crimson"). By three issues, Haywood contends that (1) the trial court erred in granting summary judgment in favor appellees "with respect to the ownership of the disputed mineral interest and related merits issues," and "with respect to attorney's fees (issues one and three), and (2) the trial court erred in denying Haywood's cross-motion for partial summary judgment "with respect to those same issues." We affirm.

## I.   BACKGROUND

According to their pleadings, the Willis Heirs owned approximately 15,000 acres of land. In 1972, the Willis Heirs granted to Marvey A. Finger the 15,000 acres, which included, among other things, a 1/2 mineral estate interest in a 640-acre tract of land (the "1972 Deed"). Subsequently, Finger conveyed half of his interest in the minerals to a joint venture that he operated. In 1994, Finger sold 1/2 of the joint venture's mineral interest in the 640-acre tract to Haywood. Apparently the Willis Heirs, Finger, and others leased the mineral estate of the 640-acre tract to Crimson for production of oil and gas.[2] Crimson stated in its motion for summary judgment that the Willis Heirs negotiated and executed their own leases in 2001, 2005, and 2010, and Finger and Haywood did not join in executing those leases.[3] However, according to the Willis Heirs, production began and continued for some time, and Crimson paid royalties for production of oil and gas to all

---

[2] The Willis Heirs claim that they reserved half of the mineral estate conveyed to Finger in the 1972 Deed, leaving Finger and the Willis Heirs each with 1/4 interest in the mineral estate at the time of the conveyance. The parties have all operated under the impression that the Willis Heirs have a 1/4 interest in the mineral estate, Finger has a 1/8 interest in the mineral estate, the joint venture has a 1/16 interest in the mineral estate, and Haywood has a 1/16 interest in the mineral estate.

[3] In its motion for summary judgment, Crimson stated that the Willis Heirs began leasing their interest in 1981.

2

parties including the Willis Heirs and Haywood. The Willis Heirs were paid royalties of 1/4 payment until 2012—which is half of Finger's original 1/2 mineral estate interest. Finger and the joint venture each received royalties of 1/8 of the mineral estate, and Haywood received a 1/16 royalty payment, i.e., he received half of 1/8, which is 1/16.

In 2011, a "Correction Deed" seeking to clarify the 1972 Deed was sent to all interested parties, including among others, the Willis Heirs, Haywood, Finger, and Joseph Hudson Sr., one of the original signatories to the 1972 Deed. Everyone involved signed the "Correction Deed," except for Haywood. After receiving the "Correction Deed," Haywood filed suit against the Willis Heirs claiming that the Willis Heirs have no executive rights and that in the 1972 Deed, the Willis Heirs granted their entire 1/2 mineral estate interest to Finger leaving the Willis Heirs with no mineral rights under the 1972 Deed. Haywood asserted that the Willis Heirs were entitled to royalty payments only if and when it signed a lease, and it had not done so; therefore, Haywood had a 1/8 interest in the mineral estate and Crimson had only paid him for a 1/16 interest. According to Haywood, Crimson owed it royalty payments for the 1/16 interest that it had paid to the Willis Heirs.[4]

In its live pleading, Haywood sued appellees for the following: (1) a violation of section 91.401 of the Texas Natural Resources Code because Crimson had allegedly failed to pay it "all of the proceeds derived from the sale of the Haywood Mineral Interest Deep Rights Acreage"; (2) an accounting from Crimson "related to the past production and sale of its entire undivided mineral interest in the Deep Rights Acreage"; (3) conversion; (4) fraud; (5) conspiracy; (6) "[a]iding and [a]betting"; (7) the imposition of a constructive

---

[4] We note that none of the other interest holders including Finger have disputed the Willis Heirs' entitlement to 1/4 royalties.

3

trust due to unjust enrichment; (8) money had and received; (9) suit to quiet title; (10) trespass to try title; and (11) declaratory judgment. The gist of Haywood's allegations stem from its belief that it owns a 1/8 interest in the minerals of the 640-acre tract of land as opposed to the 1/16 interest used by Crimson to calculate the royalties it paid it. Specifically, Haywood accused Crimson and the Willis Heirs of "knowingly, wrongfully, and maliciously exercis[ing] dominion and control over one half (1/2) of [its] minerals," seeking "to deceive Haywood respecting what its mineral interest was," and intending "to deprive Haywood of its mineral interest and to convert its minerals and the proceeds from the production of such minerals." Haywood further alleged that Crimson and the Willis Heirs "fraudulently conspired to accomplish an unlawful purpose, namely to deprive Haywood of its mineral interest and the proceeds from the production of its mineral interest," and acted in concert "to deprive Haywood of its mineral interest and the proceeds from the production of its mineral interest" because both "knew that neither had a rightful claim to the Haywood Deep Rights minerals." Haywood alleged that "Crimson knew that the Willis Heirs did not have the right or authority to enter into a lease for the Haywood Deep Rights minerals," and that it had suffered injury.

All parties moved for summary judgment asking the trial court to declare under the Uniform Declaratory Judgment Act (UDJA) which party owned the disputed mineral rights. Appellees presented several grounds for their entitlement to summary judgment, which included the following: (1) the only reasonable interpretation of the 1972 Deed is that the Willis Heirs own a 1/4 interest in the royalties, bonuses, and delay rentals, plus the right to lease their share of the mineral interests on the 640-acre tract with Finger and Finger's grantees, which includes Haywood; (2) Haywood is estopped from arguing otherwise; (3)

4

Haywood's interpretation would require reformation of the 1972 Deed because it would violate the rule against perpetuities; and (3) in the alternative, if the trial court determined that Haywood owned the disputed 1/16 interest, then Crimson and the Willis Heirs adversely possessed it under the five-year statute of limitations, or at minimum, the Willis Heirs adversely possessed the executive right.

The trial court granted appellees' motions for summary judgment and denied Haywood's motion for summary judgment, and it declared that the Willis Heirs "reserved one-quarter of all bonuses, delay rentals, and royalties in the Disputed Acreage in and under the 1972 Deed" and "retained the executive right to lease the Disputed Acreage in and under the 1972 Deed." The trial court also determined that the statute of limitations and estoppel prevented Haywood from claiming royalties and executive rights on the disputed acreage. Finally, the trial court concluded that even assuming Haywood held the executive rights to the disputed acreage, the Willis Heirs were entitled to 1/4 of all bonuses, delay rentals, and royalties because Haywood's failure to lease "would breach a fiduciary duty to the Willis Heirs . . . ." The trial court also awarded attorney's fees to appellees. This appeal followed.

## II.    STANDARD OF REVIEW

In a traditional motion for summary judgment, the movant has the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a; *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). If the movant's motion and summary judgment proof facially establish a right to judgment as a matter of law, the burden shifts to the non-movant to raise a material fact issue sufficient to defeat summary judgment. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d

5

195, 197 (Tex. 1995). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex. App.—Dallas 2000, pet. denied). When both sides move for summary judgment and one is granted and the other denied, we determine all questions presented and render the judgment the trial court should have rendered. *Lubbock Cty. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 583 (Tex. 2002).

### III.    THE 1972 DEED

By its first and second issues, Haywood contends that the trial court erred by "declaring that the Willis Heirs have an ownership interest in the Disputed 1/16." Haywood argues that the Willis Heirs granted all of their 1/2 mineral interest to Finger, do not possess any royalty or executive rights, and will only collect a share of the royalties, bonuses, and delay rentals if Haywood executes a lease. Appellees respond that Haywood focuses on isolated portions of the lease to support his arguments while omitting key provisions. And, appellees argue that although the Willis' Heirs granted their entire 1/2 mineral interests to Finger, they reserved 1/4 of the royalties, bonuses, and delay rentals.

The 1972 Deed states, in relevant part, the following:

> If the said Grantors collectively have an ownership interest, prior to this conveyance, of one-half or more of all of the oil, gas and other minerals in, on, and under any of the properties, described in Exhibit "A", the Grantors grant unto the Grantee one-half (1/2) of all of the oil, gas and other minerals in, on and under any of the properties described in Exhibit "A".[5]  The Grantors expressly except and reserve unto themselves, their heirs and assigns, all of the oil, gas and other minerals in, on and under any of the properties described in Exhibit "A" which the Grantors collectively own in excess of the one-half interest conveyed herein to the Grantee. For any of those properties described in Exhibit "A" in which the Grantors collectively own, prior to this conveyance, one-half or more (but less than 100%) of all of the oil, gas and other minerals in, on and under any of the properties

---
[5] The 640-acre tract of land was listed in Exhibit A.

6

described in Exhibit "A" provided, that the Grantors join with Grantee, his successors or assigns, in any future oil, gas, and/or mineral leases covering any of said properties (which right to join in such leases is hereby reserved to Grantors), then the oil, gas and mineral lease bonuses, rental, royalties or other sums to be received under or for the lease will be allocated so that the Grantors (collectively) and the Grantee shall share equally in the mineral lease bonuses, rental, royalties or other sums received. For any of these properties described in Exhibit "A" in which the Grantors collectively own, prior to this conveyance, all of the oil, gas, and other minerals, the Grantors hereby also reserve the right to join in any lease executed by Grantee.

First, the Willis Heirs granted to Finger 1/2 "of all of the oil, gas and other minerals in, on and under any of the properties described in Exhibit 'A.'" For the 640-acre tract at issue here, the Willis Heirs owned a 1/2 mineral estate. Thus, under the plain terms of the 1972 Deed, the Willis Heirs granted Finger their entire 1/2 interest in the mineral estate, which is undisputed by the parties. The dispute hinges on how to interpret the right reserved by the Willis Heirs. Haywood argues that the Willis Heirs only reserved a right to receive royalties if Haywood signs a lease, and if Haywood does not sign a lease, the Willis Heirs are not entitled to any royalties on his share of the estate, even if production occurs. Haywood cites the following excerpt of the 1972 Deed stating:

> For any of those properties described in Exhibit "A" in which the Grantors collectively own, prior to this conveyance, one-half or more (but less than 100%) of all of the oil, gas and other minerals in, on and under any of the properties described in Exhibit "A" provided, that the Grantors join with Grantee, his successors or assigns, in any future oil, gas, and/or mineral leases covering any of said properties (which right to join in such leases is hereby reserved to Grantors), then the oil, gas and mineral lease bonuses, rental, royalties or other sums to be received under or for the lease will be allocated so that the Grantors (collectively) and the Grantee shall share equally in the mineral lease bonuses, rental, royalties or other sums received.

Appellees respond that we may not read the 1972 Deed in isolation and that when read as a whole, it is clear that the parties intended that the Willis Heirs reserve a royalty interest of 1/2 of the interest conveyed to Finger. Although we agree with Haywood that

7

this clause does not specifically include any of the widely used reservation language included in other instruments found in the case law and that the 1972 Deed itself contains reservation language in other parts, this clause clearly states that the Willis Heirs and Finger "shall share equally in the mineral lease bonuses, rentals, royalties or other sums received" on the 640 acre-tract.

In *Luecke*, the deed reserved for the grantor an undivided 1/2 non-participating interest in the royalties reserved by the grantee "at any time in the future and which may be payable to Grantee, his heirs and assigns under any future lease of the property." *Luecke v. Wallace*, 951 S.W.2d 267, 274 (Tex. App.—Austin, 1997 no writ). The appellant argued that the phrases "reserved . . . at any time in the future" and "which may be payable . . . under any future lease of the property" prevented the royalty interest from vesting until a lease was executed. *Id.* The Austin Court of Appeals disagreed pointing out that by definition a royalty interest is a share of future product or profit from an oil and gas lease. *Id.* It concluded, as such, "neither oil and gas production nor the existence of an oil and gas lease are necessary for a royalty interest to be a vested, present interest (i.e., a fee simple interest in royalties)" and that "[a]ll that is necessary is for the royalty-interest owner to have [is] a *present* right to a share of future production." *Id.* This Court has concluded that "[i]t is well-settled that a royalty interest in an oil and gas lease is an interest in real property, held to have the same attributes as real property." *Kelly Oil Co. v. Svetlik*, 975 S.W.2d 762, 764 (Tex. App.—Corpus Christi 1998, pet. denied). Moreover, in *Elick*, the court concluded that the appellants reserved an executory interest although the deed did not have any of the typical reservation language, and it merely stated that the parties had "expressly agreed and understood" that the appellant "shall join in the

8

execution of any future oil, gas, or mineral lease." *Elick v. Champlin Petrol. Co.*, 697 S.W.2d 1, 5 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.).

Based on the authority above, we conclude that the 1972 Deed vests the Willis Heirs with a present right to a 1/2 share of future production on Finger's 1/2 mineral interest, which is a 1/4 interest in the royalties, bonuses, and delay rentals. *See id.* To construe the deed otherwise would create a contingent interest that may never vest if Haywood never signs a lease. Thus, we agree with the Willis Heirs that their royalty interest is a vested, present interest. *See id.*

Accordingly, the trial court properly concluded and declared that as a matter of law the Willis Heirs had a 1/4 royalty interest in the 640-acre tract. Thus, the trial court properly granted summary judgment in favor of appellees and properly denied Haywood's motion for summary judgment. We overrule Haywood's first issue.

Next, Haywood contends that the Willis Heirs failed to reserve an executive right in the 1972 Deed. We need not determine this issue because even assuming, without deciding, that the Willis Heirs lacked executive rights, the Willis Heirs had a 1/4 interest in the royalties, bonuses, and delay rentals and Haywood had a 1/16 interest in the same. The summary judgment evidence establishes that Crimson properly paid Haywood his 1/16 share. Thus, even assuming that the trial court's judgment is incorrect that the Willis Heirs lacked executive rights, we are unable to conclude that Haywood prevails because Haywood suffered no harm. *See* TEX. R. APP. P. 44.1(a); *Bullard v. Broadwell*, 588 S.W.2d 398 (Tex. Civ. App. 1979) ("The Texas rule is that a cotenant who produces minerals from common property without having secured the consent of his cotenants is accountable to

them on the basis of the value of the minerals taken less the necessary and reasonable cost of producing and marketing."). We overrule Haywood's second issue.

## IV. ATTORNEY'S FEES

By its third issue, Haywood contends that the trial court improperly awarded attorney's fees to appellees because appellees' cause of action below was really a suit for trespass to try title, which does not allow for attorney's fees. Appellees both argue that nonetheless, a suit for trespass to try title is not the proper cause to bring when seeking the determination of non-possessory interests such as royalties.[6]

> We review a trial court's award of attorney's fees under the UDJA for an abuse of discretion. Under the UDJA, a court "may award ... reasonable and necessary attorney's fees as are equitable and just." However, a party may not recover attorney's fees under the UDJA when the only issues, aside from attorney's fees, concern trespass to try title or clearing of title. A trespass-to-try-title lawsuit is an action generally used to clear problems in chains of title or to recover possession of land unlawfully withheld from a rightful owner. The recovery of attorney's fees for trespass to try title is barred because, with a limited exception for boundary disputes between adjoining properties, it is not provided for by chapter 22 of the Texas Property Code.

*Shelton v. Kalbow*, 489 S.W.3d 32, 55 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (internal citations omitted); *see also* TEX. PROP. CODE ANN. § 22.001(a) (West, Westlaw through 2017 1st C.S.) ("A trespass to try title action is the method of determining title to lands, tenements, or other real property."). "A trespass-to-try title suit seeks title and possession of real property, and imposes unique and somewhat burdensome procedural requirements." *Florey v. Estate of McConnell*, 212 S.W.3d 439, 447 (Tex. App.—Austin

---

[6] Appellees also respond that Haywood filed a declaratory action against them and that in the trial court Haywood consistently argued and claimed that his cause of action was for a declaratory judgment. Accordingly, appellees argue that Haywood may not now argue otherwise. Crimson further argues that the construction of the 1972 Deed and the trial court's declarations do not give it a possessory interest in the property, and the trial court's declarations merely provided how Crimson is to divide the royalties.

2006, pet. denied). However, a royalty interest is non-possessory. *See Richmond v. Wells*, 395 S.W.3d 262, 266–67 (Tex. App.—Eastland 2012, no pet.); *see also Concord Oil Co. v. Pennzoil Expl. & Prod. Co.*, 966 S.W.2d 451, 459 (Tex. 1998) (recognizing that a royalty interest is non-possessory). And, "[g]enerally, non-possessory interests are not proper subjects of a trespass-to-try-title action." *Richmond*, 395 S.W.3d at 267.

Here the trial court concluded that the Willis Heirs own a 1/4 interest in the royalties, bonuses, and delay rentals, which is a non-possessory interest. Therefore, a suit for trespass to try title would not have been proper. *See id.* We overrule Haywood's third issue.

## V.    CONCLUSION

We affirm the trial court's judgment.


**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
14th day of December, 2017.

11