COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-06-430-CV

 

 

A.J. MORRIS, M.D., P.A., RIO                                             APPELLANTS

GRANDE VALLEY IMAGING, 

INC., AND A.J. MORRIS,
M.D.

 

                                                   V.

 

DE
LAGE LANDEN FINANCIAL                                                  APPELLEE

SERVICES, INC.

 

                                              ------------

 

            FROM THE 67TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








Appellants A.J. Morris, M.D., P.A. (AAJMPA@), Rio
Grande Valley Imaging, Inc. (ARGVI@), and
Dr. A.J. Morris appeal from a summary judgment granted for Appellee De Lage
Landen Financial Services, Inc. (ADLFS@).  Because we hold that DLFS established its
right to summary judgment on some of its claims for damages but not for others,
we affirm in part and reverse in part.

Background Facts

DLFS is in the business of arranging for the
leasing and financing of commercial equipment, sometimes under a name other
than DLFS.  For a time, DLFS had a
business agreement with Toshiba American Medical Systems, Inc. (ATAMS@) under
which DLFS leased out equipment made by TAMS. 
The business agreement provided that DLFS would use the name Toshiba
American Medical Credit (ATAMC@) in
executing the leases. 

Using the TAMC name, DLFS entered into a lease
with AJMPA in 1998 (the A1998 lease@).  The lease stated that the lessor was AToshiba
American Medical Credit, a program of Toshiba American Medical Systems, Inc.@  Dr. Morris also entered into a guaranty
covering that lease.  Appellants claim
that they did not know that TAMC was the same entity as DLFS or that TAMC,
rather than TAMS, was the lessor.  

In 2000, AJMPA and RGVI entered into a lease with
TAMC (the A2000 lease@), and
Dr. Morris executed a guaranty for the lease. 
TAMC subsequently sent AJMPA letters notifying it that both leases had
been assigned to DLFS. 








Under both the 1998 lease and the 2000 lease,
AJMPA and RGVI agreed to pay sales tax on the equipment as well as property tax
assessed against the equipment.  The
leases also provided for the payment of late charges and finance charges for
untimely rental payments.  The leases
allowed AJMPA and RGVI to purchase the equipment at the end of the lease for
ten percent of the original acquisition amount so long they were not in default
and they exercised the option not less than 180 days before the end of the
lease term.

After AJMPA and RGVI ceased making payments on
the leases, DLFS sent notice of default to Dr. Morris, demanding compliance
with the lease obligations and notifying him that it was entitled to declare
him, as guarantor, liable for the entire amount owing under the leases.  When no payments were made, DLFS filed suit
against Appellants.  

Procedural History

A number of Appellants= issues
depend on what pleadings were filed and when. 
In DLFS=s original petition, it asserted
breach of contract and unjust enrichment claims and sought attorney=s
fees.  Appellants filed an answer
and  counterclaims.








DLFS then filed a motion for summary
judgment.  DLFS sought $941,753.81 in
damages for unpaid rent, property tax, and sales tax; late charges and finance
charges; the remaining accelerated payments on the 2000 lease; and the purchase
option value of the equipment.  DLFS also
sought $55,000 in attorney=s
fees.  With its motion, DLFS attached the
affidavit of Jake Hornung and various business records.  DLFS also sought no-evidence and traditional
summary judgment on Appellants=
counterclaims. 

Appellants filed an amended answer and an amended
counterclaim, adding a claim for rescission. 
Appellants also filed a response to the summary judgment motion to which
they attached as evidence an affidavit from Dr. Morris; a letter from Dr.
Morris to DLFS from April 2003, informing DLFS that he wished to exercise the
purchase option at the end of the 1998 lease; and a letter from TAMC to Dr.
Morris, offering him terms for the 2000 lease.

DLFS filed a motion to strike portions of Dr.
Morris=s
affidavit and a motion for leave to file additional summary judgment
evidence.  The trial court granted both
motions and granted partial summary judgment (Afirst
summary judgment@) disposing of DLFS=s breach
of contract claims.

Appellants then filed a second amended answer and
second amended counterclaim and a motion to set aside the first summary
judgment.  DLFS filed an answer and
special exceptions to the second amended counterclaim.








Appellants filed a third amended answer and
second amended counterclaim.  DLFS filed
another answer and again filed special exceptions to the  second amended counterclaim.  Appellants filed a response to the special
exceptions as well as a first supplement to the second amended
counterclaim.         DLFS filed an answer and special exceptions to the first
supplement.  The trial court held a
hearing on the special exceptions, and at the conclusion of the hearing stated
that it granted the special exceptions, dismissed Appellants=
counterclaims, and granted final judgment. 
The court requested the parties to provide an order to that effect.  DLFS filed a proposed order.  The proposed order does not appear in the
record, nor does any written order from this hearing.  

Appellants next filed an amended motion to vacate
or modify the first summary judgment. 
DLFS filed a response to that motion. 
It then filed a second motion for summary judgment incorporating by
reference evidence filed with its first summary judgment motion.  In the motion, DLFS asked the trial court for
a judgment clarifying that DLFS was entitled to the return of the leased
equipment as a result of the favorable judgment on its breach of contract
claims.  It also sought judgment on
Appellants= counterclaims.  Appellants filed a response, with evidence
attached, and objections to DLFS=s
summary judgment evidence.  At the
hearing on the motion, DLFS stated that it did not object to Appellants=
evidence being considered for purposes of the second motion but that it did
object to any attempt by Appellants to use the evidence to relitigate the first
summary judgment.  








After a hearing, the trial court granted the
second summary judgment for DLFS.  The
order stated that it Asupercede[d] and replace[d]@ the
first summary judgment order.  The trial
court subsequently entered an order denying Appellants=
objections to DLFS=s summary judgment evidence.  After the trial court denied Appellants= motion
for reconsideration and for new trial, they filed this appeal.

Analysis

A plaintiff is entitled to summary judgment on a
cause of action if it conclusively proves all essential elements of the claim.[2]  When reviewing a summary judgment, we
take as true all evidence favorable to the nonmovant, and we indulge every
reasonable inference and resolve any doubts in the nonmovant=s favor.[3]


In Appellants= first
issue, they argue that the evidence and objections they filed in response to
DLFS=s second
summary judgment motion were also applicable to DLFS=s first
summary judgment motion.  








Assuming for the moment that DLFS=s
evidence established its right to judgment, the burden then shifted to
Appellants to raise a genuine issue of material fact to prevent summary
judgment.[4]  Objections to Appellee=s
evidence and any evidence on which Appellants relied to raise fact issues had
to be presented to the trial court before it ruled on the claims.[5]  Thus, if in the second summary judgment
proceedings, the same claims were not before the trial court, any objections to
the evidence would come too late, as would any evidence produced by Appellants
to raise fact issues. 








The question is therefore whether DLFS=s breach
of contract claims were before the trial court after the first summary
judgment.  The issues determined by a
summary judgment are final even though the judgment is interlocutory, and a
party may not continue to litigate the issues so determined unless the judgment
is set aside by the trial court or reversed on appeal.[6]  If a trial court decides some of the
contested issues prior to trial in a partial summary judgment, the trial court
may later revisit those issues while it retains plenary power over the judgment
as long as the parties are given a fair opportunity to present evidence on the
issues.[7]  A statement in a final judgment that it
supercedes and replaces a previous partial summary judgment does not necessarily
demonstrate that the trial court revisited the previously litigated issues.[8]  That the trial court=s final
judgment is inconsistent with its prior grant of partial summary judgment and
that, during trial on the remaining issues, the trial court heard evidence
relating to the issues previously decided are indications that a trial court
reconsidered previously litigated issues.[9]









Consideration of the record of the hearing on the
second summary judgment and a comparison of the two orders granting summary
judgment show that in the second summary judgment proceeding, the trial court
determined only those issues raised in the second summary judgment motionCDLFS=s
entitlement to the return of the equipment and Appellants=
counterclaims.  The trial court
repeatedly mentioned in the hearing that it had already granted final summary
judgment in the previous hearing on the special exceptions.  The court stated that it understood that the
parties disputed whether the second summary judgment motion was Ajust
more of a clean up@ or whether the court could
consider Appellants= objections to DLFS=s
summary judgment evidence.  The court
ultimately overruled Appellants=
objections, and it entered a judgment that is entirely consistent with the
first summary judgment.  The second
summary judgment expanded the amount of prejudgment interest to include the
time from the first summary judgment to the second and addressed the issues
raised by the second summary judgment motion but in all other respects matched
the first summary judgment.  The trial
court did not revisit the issues of existence of lease contracts, performance
by DLFS, breach of contract by Appellants, or damages; those issues were not
litigated in the second summary judgment proceeding.  Thus, Appellants could not rely on objections
made in or evidence attached to their response to the second summary judgment
to revisit those issues previously adjudicated. 
We overrule Appellants= first
issue.








But although Appellants could not rely on
objections made after judgment  to
prevent summary judgment, on appeal, Appellants may raise new objections to the
substance of DLFS=s evidence to challenge whether
DLFS=s
evidence was sufficient to establish its right to judgment.[10]  In Appellants= third
issue, they argue that DLFS=s
evidence was insufficient because it was based entirely on the affidavit of Jake
Hornung, a Alitigation specialist@ with
DLFS, which they contend was not competent summary judgment evidence.  We note that under this issue, Appellants do
not object to this evidence with respect to their counterclaims. 








Appellants object that Hornung=s
affidavit fails to meet the business records exception to the hearsay rule
because the affidavit was not made by a person with knowledge of the facts
asserted and does not state or prove that Hornung or another DLFS employee made
the records in the regular scope of business or made the records at or near the
time of the event.  They also object that
the affidavit does not satisfy rule 902(10) of the Texas Rules of
Evidence.  These are objections to the
form of the affidavit and had to be timely raised in the trial court to be
raised on appeal.[11]  Appellants also object that Hornung=s lack
of personal knowledge prevents the affidavit from constituting competent
summary judgment evidence.  This
objection is also an objection to form.[12]  Appellants did not make these objections to
the affidavit until after the trial court had entered judgment on the breach of
contract claims, and therefore we will not consider them in determining whether
DLFS established its breach of contract claims.

But Appellants also object to statements in
Hornung=s
affidavit that they allege are conclusory. 
An objection that a statement is conclusory is an objection to
substance, not form, and may be raised for the first time on appeal.[13]  We therefore consider Appellants=
arguments on these objections.

Appellants= first
objection is that the statement by Hornung that DLFS was the lessor of the
equipment is a legal conclusion. 
Appellants refer to Hornung=s
repeated statements that DLFS entered into the leases with AJMPA and RGVI using
the TAMC name.  Appellants appear to
argue that because they dispute the identity of the lessor and contend that the
lessor was TAMS rather than TAMC or DLFS, Hornung=s
statements constitute legal conclusions. 













A statement is conclusory when it does not
provide the underlying facts to support it.[14]  To the extent that these statements are
conclusory, any error by the trial court in considering them was harmless as to
DLFS=s breach
of contract claims because sufficient summary judgment evidence demonstrates
that DLFS is currently the lessor under the two leases.[15]  DLFS=s
summary judgment evidence included:  (1)
the 1998 lease between TAMC, a program of TAMS, as lessor, and AJMPA as lessee;
(2) a letter from TAMC to Dr. Morris confirming changes in the monthly payment
under the 1998 lease, as provided in the lease; (3) a letter from TAMC to AJMPA
stating that the 1998 lease had been assigned to DLFS; (4) the 2000 lease
between TAMC, a program of TAMS, as lessor, and AJMPA and RGVI; (5) a letter
from TAMC to AJMPA and RGVI stating that the 2000 lease had been assigned to
DLFS; (6) the 1998 guaranty between Morris and TAMC; and (7) the 2000 guaranty
between Morris and TAMC.  Appellants do
not deny that they entered into the leases and guaranties at issue in this case.  In their brief, Appellants acknowledge that
letters were forwarded to AJMPA and RGVI that Apurportedly
indicat[ed] that the 1998 and 2000 [leases] had been assigned to [DLFS],@
although they contend that the letters were sent by TAMS.

Appellants=
response to the first summary judgment motion included a 2003 letter from Dr.
Morris, on behalf of AJMPA, to DLFS indicating that he wished to exercise the
purchase option at the end of the 1998 lease. 
Thus, Dr. Morris understood that DLFS was the lessor at that time with
respect to at least the 1998 lease.  As
for the 2000 lease, Appellants included with their evidence a proposal letter
from TAMC to Dr. Morris and RGVI offering contract terms for the 2000
lease.  The letter is from TAMC and
signed by a TAMC representative and does not refer to TAMS as lessor in any
capacity.  The letter states that TAMS is
the manufacturer of the equipment and that TAMC would be the lessor.  Thus, Appellants= own
evidence demonstrates that they were aware that the 2000 lease contract was
being offered by TAMC as lessor.  And, as
with the 1998 lease, Appellants received a letter indicating that the 2000
lease had been assigned to DLFS.








Appellants produced no evidence raising a fact
issue as to whether DLFS is now the lessor under the leases and guaranties, and
DLFS demonstrated as a matter of law the existence of the contracts at issue
between it and Appellants.  Whether DLFS
fraudulently represented to Appellants that TAMS was the lessor at the time the
leases were entered into is relevant to Appellants=
counterclaims but not to DLFS=s burden
of proving that it is currently the lessor who may enforce the leases and
guaranties with respect to its breach of contract claims.

Appellants also object that Hornung=s
statement that DLFS Ahas performed its obligations
under the Lease and Guaranties@ is
conclusory.  We agree but hold that any
error by the trial court in considering it was harmless.  Under the lease agreements, AJMPA and RGVI
agreed to lease certain medical equipment, and it is undisputed by the parties
that the equipment was delivered as agreed. 


Appellants argue, however, that DLFS breached the
leases by failing to comply with the 
lease end option in the 1998 lease by never providing AJMPA with the
original acquisition cost of the equipment so that it could calculate the lease
end purchase price.  They also argue that
DLFS breached the leases by wrongfully attempting to repossess the equipment in
November 2005, damaging the equipment in the process.  








Although Dr. Morris may have notified DLFS in
2003 that AJMPA wished to exercise the purchase option at the end of the lease,
the lease provided that such option could only be exercised if no event of default
had occurred and remained uncured.  Dr.
Morris admitted in his affidavit attached to Appellants=
response to the first summary judgment motion that he stopped making payments
on the equipment, which is an event of default under the leases.  In addition to statements in Hornung=s
affidavit regarding Appellants= payment
history, DLFS provided as summary judgment evidence an accounting history
showing that the monthly rent payment for May 2004, the final month of the
original lease term, was not paid until 2005. 
Furthermore, AJMPA was provided with what DLFS contends is the
acquisition cost in a letter it sent to Dr. Morris in March of 1999.  Although Dr. Morris disputes that this amount
is the actual acquisition cost of the equipment, the fact that he disputes how
much DLFS expected him to pay to exercise the option does not raise a fact
issue on whether he was furnished with the information.  We also note that Dr. Morris did not indicate
a disagreement with the quoted acquisition cost when he sent the letter in 2003
stating that he wished to exercise the lease end purchase option.  Because there existed an uncured event of
default at the expiration of the 1998 lease and therefore DLFS was under no
obligation to allow Appellants to purchase the equipment and because DLFS did
provide Appellants with the acquisition cost, Appellants failed to raise a fact
issue as to whether DLFS performed under the leases.  








Furthermore, Appellants cannot argue on appeal
that DLFS wrongfully attempted to repossess the equipment and thereby breached
the leases.  DLFS=s
attempt to repossess the equipment occurred after the trial court had entered
the first summary judgment ruling on DLFS=s breach
of contract claims.  An event occurring
after adjudication of a breach of contract claim cannot be a consideration in
the trial court=s determination of the plaintiff=s prior
breach.[16]  Thus, because DLFS sufficiently established
that it performed its obligations under the leases and guaranties, and because
Appellants did not raise a genuine issue of material fact on the issue, any
error by the trial court in considering Hornung=s
statement to that effect was harmless. 








Appellants next object to statements by Hornung
with respect to Appellants= breach
of the leases.  They first object to his
statement as to Appellants= (1)
delay or failure to make lease payments; (2) failure to exercise the purchase
option on the equipment; (3) retaining possession of the equipment; (4) failure
to pay property taxes; (5) defaults on the leases; (6) failure to cure the
defaults; and (7) refusal to perform under the lease agreements and personal
guaranties.  Rather than point out
specific objectionable statements by Hornung, Appellants point to nine
paragraphs, which we note take up almost three full pages, that they say
contain conclusory statements about these seven subjects.[17]  In our review of these three pages, we found
only one conclusory statementCthat
DLFS had performed its contractual obligations, a statement we have already
discussed.








Finally, Appellants object to Hornung=s
statements over nine pages of his affidavit regarding DLFS=s
alleged damages resulting from the breaches of the 1998 and 2000 leases.  Appellants do not point out which specific
statements they believe are conclusory. 
After reviewing the nine pages at issue, we found only one conclusory statement.  On page ten of his affidavit, Hornung states
that DLFS Ahas determined that the amount
of taxes associated with the [1998 lease] for the calendar year of 2005 is
$10,159.38.@ 
Unlike the amount of taxes billed for the 2003 and 2004 years, Hornung
does not provide the basis for this calculation, support the statement with
documentary evidence, or demonstrate any personal knowledge of how DLFS arrived
at this figure.  Because this statement
was conclusory, the trial court should not have considered it.[18]  We sustain Appellants= third
issue as to this statement and overrule their issue as to the remainder of
their objections.

In Appellants= second
issue, they contend that DLFS failed to prove that no genuine issue of material
fact existed on its breach of contract claims and its asserted damages.  To establish its right to judgment, DLFS
first had to establish the existence of a valid contract between it and
Appellants; its performance under the contract; breach of the contract by
Appellants; and damages sustained by DLFS as a result of Appellants= breach.[19]  








As discussed above, DLFS established as a matter
of law the existence of a contract between it and Appellants and performance by
DLFS.  DLFS also established that
Appellants breached the leases.  And,
because the guaranties provided that an event of default under the lease
constituted an event of default under the guaranty, DLFS also established that
Appellants breached the guaranties. 
Appellants argue, however, that they made all of the requisite lease
payments and timely and properly exercised the lease end option under the 1998
lease.  Although Appellants may have made
the requisite number of monthly payments under the 1998 lease, they did not do
so until 2005 and therefore did not do so without first breaching the lease
agreements.  Furthermore, as discussed
above, Dr. Morris=s attempt to exercise the lease
end purchase option on the 1998 lease had no effect because of the existence of
an uncured event of default at the end of the lease term. 

Appellants also argue that a genuine issue of
material fact exists as to whether AJMPA and RGVI complied with the 2000
lease.  In his own affidavit, Dr. Morris
stated that he stopped making payments on the equipment, which under the lease
was an event of default.  Appellants did
not timely offer any other evidence raising a fact issue on compliance with the
lease.  DLFS established a prima facie
case that Appellants breached the 2000 lease, and Appellants failed to
demonstrate that a genuine issue of material fact exists on the matter.  Appellants attempted to introduce evidence
that they contend raised a fact issue on the matter, but they did not do so
until after the first summary judgment. 
Because the issue of breach of contract was never relitigated after that
judgment, that evidence, even if it raised a fact issue, was not timely before
the trial court on the issue of Appellants= breach.








We now consider whether DLFS established its
damages as a matter of law.  With respect
to the 1998 lease, DLFS asked the court to award $285,871.80 in damages for
unpaid monthly rent payments.  Although
Appellants assert on appeal that the 1998 lease only required fifty-seven
payments, in their counterclaims filed before the first summary judgment, they
alleged that the 1998 lease required sixty payments.  The lease itself failed to provide the rental
payment for the last several months of the lease.  It expressly set out that for the first three
months, no payment would be required, and it expressly set out the rent due for
months four through sixty B
$19,257.43 in base rent, $5,200 for a service agreement, and $2,017.81 in
taxes.  But through an omission, the
lease says nothing about what rent, if any, would be due for months sixty-one
through sixty-three.  Because the parties
clearly knew how to specify when no rent was required, we cannot assume that
they intended for no rent to be due for the last several months of the term.








Appellants are bound, however, by their judicial
admissions.  AAssertions
of fact, not plead in the alternative, in the live pleadings of a party are
regarded as formal judicial admissions.@[20]  Appellants in their counterclaim filed before
the first summary judgment asserted that the 1998 lease Aprovided
for 60 payments in the sum of $26,475.24 each which allegedly included sales
tax in the amount of $2,017.81.@  They repeated this assertion in their amended
counterclaim, also filed before the first summary judgment.  The statement is clear and unequivocal and
was not pleaded in the alternative.[21]
 They did not repeat this assertion in
their amended counterclaims filed after the first summary judgment; however, at
the time the trial court ruled on DLFS=s breach
of contract claim, their live pleadings did contain this statement of
fact.  Thus, the terms of the original
contract were established to include 60 payments of $26,475.24 each, which
included the base payment of $19,257.43, sales tax, and the service agreement
payment.[22]   

Because the actual cost of the equipment differed
from the cost on which the lease payments were calculated, TAMC sent a letter
to AJMPA modifying the rent payment.  The
lease allowed TAMC to change the amount of rent by up to fifteen percent if the
actual cost differed from the estimate. 








As with the original lease, the letter contained
a mistake.  Where the original lease had
an omission, the letter amending the lease contained a typographical error
stating that the new lease term requires A36
payments.@ 
But the letter taken as a whole demonstrates that A36
payments@ was a
typographical error.  The original
contract had a lease term of sixty-three months.  The letter reasserts that the original
contract had a lease term of sixty-three months.  The letter=s
purpose was to change the lease payments to reflect the actual cost of the
equipment, and it states that all other lease terms and conditions would remain
the same.  The letter states that as
amended the lease calls for no payment through the third month and payments of
$19,058.12, plus sales tax and $5,200 as the service agreement payment, for
months four through sixty-three, for a total of $26,058.12.  Taking the letter in its entirety, A36
payments@ is clearly
a typographical error.  The amendment
letter obviously did not intend to change the duration of the lease.








Under the terms of the lease, DLFS=s change
of the rent payment amount was valid.  A
contract may provide a party to it with the right to amend the contract.[23]  The lease agreement provided TAMC with such a
rightCthe
right to change the amount of rent by up to fifteen percent.  TAMC could therefore validly adjust the
monthly base rent payment for months four through sixty-three from $19,257.43
to $19,058.12 because the adjustment changed the base rent by less than fifteen
percent.  The trial court therefore could
determine that the base rent payments should have been $19,058.12.

Having determined as a matter of law the amount
owed for each month under the 1998 lease, the trial court then had to determine
whether DLFS established as a matter of law the number of payments that Dr.
Morris failed to pay.  Although Dr.
Morris admitted in his affidavit that he stopped making payments on the
equipment, he did not say when this occurred, and thus the affidavit did not
establish how much unpaid rent he owed to DLFS. 
A DLFS accounting report that DLFS included as summary judgment evidence
showed that Appellants did not pay the May 2004 payment until 2005 and showed
no payment for any months after May 2004. 
And Hornung=s affidavit stated that
Appellants had missed fifteen payments, for the months of June 2004 to August
2005.  Fifteen months of payments of
$19,058.12 is $285,871.80, the amount claimed by DLFS.  DLFS therefore established the amount of
damages the trial court awarded it for unpaid rent under the 1998 lease.  








DLFS also established the amount of sales tax
owed on those months of unpaid rent. Hornung=s
affidavit stated that the tax rate is 8.25 percent.  That percentage applied against the monthly
rent payment is $1,572.29 per month, for a total of $23,584.35.  DLFS apparently opted not to ask for an award
of the additional costs for collecting and administering tax payments that
under the lease it was entitled to be paid. 
DLFS thus established the amount of damages the trial court awarded it
for unpaid sales tax under the 1998 lease. 

DLFS also claimed $20,971.48 in late charges and
finance charges.  Hornung=s
affidavit stated that Appellants had not paid this amount.  DLFS=s
accounting report showed that DLFS charged that amount for late charges and
finance charges and indicated that those charges were not paid.  Thus, the trial court did not err by awarding
that amount in damages.








DLFS further claimed damages for unpaid property
taxes on the equipment, taxes that Appellants agreed to pay as part of the
lease agreement.  Hornung asserted that
the taxes assessed against the equipment came to $13,682.61 for 2003 and
$11,110.76 for 2004.  For tax years 2003
and 2004, DLFS included statements from the city and county taxing authorities
showing the amounts owed for all of DLFS=s
personal property in the county, checks from DLFS to the taxing authorities
paying the billed amounts, and an accounting report showing that DLFS billed
Appellants for the taxes and that Appellants had not paid them.  According to Hornung, the accounting reports
show that the bills DLFS sent to Appellants failed to reflect two small
discounts from the taxing authorities ($64.98 for 2003 and $52.44 for 2004) but
correctly showed two administrative fees of $62.50, charged each year and
provided for under the leases as a cost for collecting and making the tax
payments.  The damages sought by DLFS
include the amounts charged by the taxing authorities, including the discounts,
plus the administrative fees.  The
evidence demonstrates the amount of property taxes that DLFS was entitled to
recover for 2003 and 2004.  

Although Dr. Morris argued in his affidavit that
the assessed value of the equipment was out of line with the fair market value
of the equipment and that he had attempted to appeal the assessment with the
appropriate taxing authorities, this does not defeat DLFS=s right
to summary judgment on this claim for damages. 
Appellants agreed to pay the assessed taxes, which is what DLFS billed
them for and what they did not pay, and under the leases DLFS was entitled to
recover the amounts sought in its summary judgment motion.  Thus, the trial court did not err by awarding
damages of $13,807.61 for the 2003 tax year and $11,235.76 for the 2004 tax
year.








For tax year 2005, DLFS claimed damages of
$10,159.38.  The only evidence in the
record supporting this amount is a statement in Hornung=s
affidavit that DLFS Ahas determined the amount of
taxes associated with the 1998 [lease] for the calendar year of 2005 is
$10,159.38.@ 
We have already held that this statement is conclusory, and therefore it
is not competent evidence of the 2005 taxes. 
Because DLFS included no other evidence of the 2005 taxes, the trial
court erred by awarding damages for property taxes for the 2005 tax year under
the 1998 lease.

Finally, DLFS asked for damages for the
agreed-upon purchase option value of the equipment, if Appellants wanted to
purchase the equipment.  The trial court
did not award damages for this amount and instead awarded DLFS possession of
the equipment.  We therefore do not need
to consider whether DLFS established the purchase option value of the equipment
as a matter of law.

With respect to the 2000 lease, DLFS asked for
unpaid rent in the amount of $148,964.31. 
DLFS produced summary judgment evidence of the lease, which established
the monthly base payment of $16,551.59. 
Dr. Morris admitted in his affidavit that he stopped making payments on
the leased equipment.  Hornung stated in
his affidavit that AJMPA and RGVI did not make the monthly payments for the
months of December 2004 through August 2005. 
Nine months of unpaid rent at a rate of $16,551.59 a month is
$148,964.31.  DLFS therefore met its
burden of establishing damages for unpaid rent under the 2000 lease.








DLFS further sought damages for the remaining
payments that were accelerated under the lease and the purchase option value of
the equipment.  The lease permitted DLFS
to accelerate the payments due under the lease upon an event of default,
discounted Aat an annual rate equal to the
lesser of six percent (6%) or the implicit rate of interest of the Lease.@  Hornung stated in his affidavit that DLFS was
entitled to $198,619.08 in damages for the accelerated payments, based on the
monthly rent provided for by the lease multiplied by the number of months left
on the lease.  Hornung stated that the
purchase option value of the equipment as set out in the lease was
$79,868.70.  The two sums together equals
a total of $278,487.78 in damages. 

According to Hornung, $278,487.78  discounted to present value comes to
$267,540.55.  Hornung expressly stated
that DLFS used a discount rate of six percent. 
Hornung did not, however, state separately the present day value of each
of the two categories of damages.  Thus,
if the trial awarded only one category of damages, Hornung=s
affidavit provided no basis for the trial court to determine the amount of that
category discounted to present day value.








The trial court awarded DLFS $192,463.87,
purportedly the amount of accelerated future payments discounted to present
value.  Not only is this figure not
provided anywhere in the affidavit, but this appears to be a calculation of
present day value that uses a discount rate of four percent, rather than six
percent.  DLFS did not include any other
evidence on which this figure could be based. 
Accordingly, the trial court erred by awarding this amount of damages
for accelerated monthly rent payments.

As for damages of the agreed-upon purchase option
value of the equipment, as with the 1998 lease, the trial court did not award
damages for this amount and instead awarded DLFS possession of the
equipment.  We therefore do not need to
consider whether DLFS established the purchase option value of the equipment as
a matter of law.

DLFS also asked for unpaid property taxes for
2003 and 2004.  Hornung stated in his
affidavit that the taxing authorities billed DLFS $16,240.77 for 2003  and that, as with the 1998 lease, DLFS
charged two administrative fees of $62.50 for the tax year, as provided under
the lease.  Hornung also stated that DLFS
was taxed $14,122.55 for 2004 and that DLFS charged two administrative fees of
$62.50 for the tax year.  Hornung stated
in his affidavit that DLFS never received payments from Appellants for the
taxes.  DLFS thus asked for a total of
$16,365.77 for the 2003 taxes and $14,247.55 for the 2004 taxes.  Hornung stated that these amounts were
unpaid.  Appellants failed to timely
introduce any evidence that they paid when due the property taxes on the 2000
lease.  DLFS established its damages for
the amount of taxes owed under the 2000 lease for 2003 and 2004.








For tax year 2005, DLFS claimed damages of
$12,882.78 under the 2000 lease.  The
only evidence in the record supporting this amount was a statement in Hornung=s
affidavit that DLFS Ahas determined the amount of
taxes associated with the 2000 [lease] for the entire calendar year of 2005 is
$12,882.78.@ 
Like Hornung=s statement with respect to the
1998 lease, this statement is conclusory and not competent evidence of the
amount of 2005 taxes.  Because DLFS
included no other evidence of the amount of 2005 taxes, the trial court erred
by awarding damages for property taxes for the 2005 tax year under the 2000
lease.

DLFS=s final
category of damages was for the costs of inspecting the equipment in September
2005.  DLFS alleged in its summary
judgment motion that as part of its expenses in connection with its remedies
under the leases, it had the equipment inspected.  DLFS included the invoice from DLFS=s agent,
Medical Marketplace, for its costs of $8,212.97.  The leases provided that Appellants were
liable for any expenses incurred by the lessor in connection with the
enforcement of any remedies under the leases, including expenses of
repossessing the equipment.  Hornung
stated in his affidavit that the inspection was Aas a
result of [Appellants=] conduct.@








The only evidence introduced by Appellants
addressing this evidence was the affidavit of Dr. Morris, which, after the
trial court sustained DLFS=s motion
to strike portions of it, asserts that A[t]here
is simply no reason to hire someone from California to inspect the equipment.@  This statement does not raise a fact issue as
to whether DLFS was entitled to recover these damages under the leases.  DLFS therefore established its entitlement to
these damages under the leases. 

Because DLFS=s
evidence was legally insufficient as to the amount owed on 2005 property taxes
or the amount of damages for accelerated payments under the 2000 lease, we
sustain Appellants= second issue on those
points.  We overrule the remainder of
Appellants= second issue.

In Appellants= fourth
issue, they argue that the trial court erred by granting summary judgment on Appellants=
affirmative defense of DLFS=s prior
material breach, their counterclaims for fraud and intentional or negligent
misrepresentation, and their claim of rescission of the lease agreements. 








With respect to Appellants=
affirmative defenses, they first argue that Morris signed the leases and
guaranties under duress.  Duress is an
affirmative defense that Appellants had to plead and raise a fact issue on
before the trial court ruled on the breach of contract claims.[24]  Appellants failed to do so, and thus, we will
not consider this argument.[25]








Appellants next argue that DLFS failed to comply
with the lease end option for the 1998 lease and that DLFS breached both leases
by wrongfully attempting to repossess the equipment in November 2005 and that
by these acts, DLFS breached the leases. 
Appellants never pleaded in the trial court that DLFS breached the
leases by wrongfully attempting to repossess the equipment,[26]
and as discussed above, the attempt by DLFS to remove the equipment did not
occur until after the trial court had granted the first summary judgment on
DLFS=s breach
of contract claims.[27]   As for Appellants=
argument that DLFS breached the 1998 lease by failing to comply with the 1998
lease end option, we have already held that because Dr. Morris and AJMPA were
in default at the end of the 1998 lease, DLFS had no obligation to allow Dr.
Morris to exercise the lease end option. 
We therefore reject Appellants=
arguments that these actions allegedly taken by DLFS, if true, constituted a
breach of the leases.

Appellants next make the point that in DLFS=s first
motion for summary judgment, DLFS did not move for summary judgment on
Appellants= affirmative defenses.  But DLFS did not need to move for summary
judgment on Appellants= affirmative defenses.[28]  Rather, to avoid summary judgment, Appellants
had to produce evidence raising a fact issue on each element of their
affirmative defenses.[29]  We reject Appellants=
argument and hold that the trial court did not err by granting summary judgment
on Appellants= affirmative defenses.








We now consider whether the trial court erred by granting
the second summary judgment on Appellants=
counterclaims.  In their amended
counterclaims, filed after DLFS filed its first summary judgment motion but before
the trial court granted the first summary judgment, Appellants asserted for the
first time several DTPA claims.  DLFS did
not amend its summary judgment motion to address these new counterclaims.  

In their third amended counterclaim, filed after
the trial court granted the first summary judgment, Appellants dropped their
DTPA claims and asserted the right of rescission based on intentional
misrepresentation or negligent misrepresentation.  In the supplement, Appellants added a fraud
claim, contending that DLFS fraudulently represented to Appellants that the
lessor was TAMS and promised to sell the leased equipment at ten percent of the
lessor=s
acquisition cost.








DLFS filed special exceptions arguing numerous
grounds for the dismissal of Appellants=
counterclaims, including (1) the trial court had already ruled on the claims as
a matter of law and (2) Appellants had waived the claims by not asserting them
before the first summary judgment.  The
trial court orally granted the special exceptions and dismissed Appellants=
counterclaims.  In its second motion for
summary judgment, DLFS reasserted those two grounds.  In the trial court=s order
granting the second summary judgment, the court stated that at the special
exceptions hearing, the court had orally ruled that the counterclaims Ahad
previously been expressly ruled on by the Court or otherwise adjudicated and/or
were waived.@ 
The court then ordered that Appellants take nothing on their
counterclaims.

Because the trial court=s
summary judgment rests on more than one ground, Appellants had to raise error
as to each ground.[30]  On appeal, however, Appellants argue only
that the trial court had not considered and rejected their claims in the first
summary judgment.  They do not address
DLFS=s
argument that their claims were waived because they were not timely
asserted.  Accordingly, we must affirm
the summary judgment on their counterclaims based on the unchallenged ground of
waiver.  

Similarly, we hold that the trial court did not
err by not allowing Appellants to replead because they could not cure their
untimeliness by repleading.[31]  We overrule Appellants= fourth
issue.








Conclusion

We reverse the trial court=s
judgment in part and affirm it in part. 
Having sustained Appellants= second
and third issues in part as to the awards of property taxes for the 2005
calendar year for both leases and the accelerated payments due under the 2000
lease, we reverse that part of the trial court=s
judgment awarding those damages and remand those three damages issues to the
trial court for further proceedings. 
Having overruled Appellants=
remaining issues, we affirm the remainder of the trial court=s
judgment.

 

 

LEE
ANN DAUPHINOT

JUSTICE

 

PANEL: CAYCE, C.J.;
DAUPHINOT and GARDNER, JJ.

 

DELIVERED: January 22,
2009











[1]See Tex. R. App. P. 47.4.





[2]See Tex. R. Civ. P. 166a(a),
(c); MMP, Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986).  





[3]IHS Cedars Treatment Ctr.
of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004). 





[4]See Tex. R. Civ. P. 166a.





[5]See Tex. R. Civ. P. 166a(c)
(stating the summary judgment shall be rendered if the evidence on file before
judgment shows there is no genuine issue as to any material fact).





[6]Martin v. First Republic
Bank, Fort Worth, N.S., 799 S.W.2d 482, 488B89 (Tex. App.CFort Worth 1990, writ denied); see also Robles
v. Consol. Graphics, Inc., 965 S.W.2d 552, 558 n.5 (Tex. App.CHouston [14th Dist.]
1997, pet. denied) (stating that because the trial court had already decided an
issue in the first summary judgment, that issue was not before the court in a
second summary judgment and the court properly refused to consider it).





[7]Elder Constr., Inc. v.
City of Colleyville, 839 S.W.2d 91, 92 (Tex.1992); see also Luecke v. Wallace, 951
S.W.2d 267, 275 (Tex. App.CAustin 1997, no writ).





[8]Luecke, 951 S.W.2d at 275.





[9]Id.





[10]Wrenn v. G.A.T.X.
Logistics, Inc., 73 S.W.3d 489, 498 (Tex. App.CFort Worth 2002, no pet.) (holding that defects
in substance may be raised for the first time on appeal).





[11]See Tex. R. Civ. P. 166a(f)
(stating that defects in the form of affidavits Awill not be grounds for
reversal unless specifically pointed out by objection@);  Grand Prairie ISD v. Vaughan,
792 S.W.2d 944, 945 (Tex. 1990) (noting that failure to object to a defect of
form in an affidavit results in waiver of the objection); St. Paul Ins. Co.
v. Mefford, 994 S.W.2d 715, 721 (Tex. App.CDallas 1999, pet. denied)
(stating that hearsay in an affidavit is a defect of form).





[12]See Vaughan, 792 S.W.2d at 945
(stating that an objection that an affidavit is not based on personal knowledge
is a defect of form); Tri‑Steel Structures, Inc. v. Baptist Found. of
Tex., 166 S.W.3d 443, 448 (Tex. App.CFort Worth 2005, pet. denied) (noting same
parenthetically).





[13]Coastal Transp. Co., Inc.
v. Crown Cent. Petroleum Corp., 136 S.W.3d 227, 232 (Tex. 2004) (holding that
conclusory statements cannot support a judgment even when no objection was made
to the statement at trial).





[14]Residential Dynamics, LLC v. Loveless,
186 S.W.3d 192, 198 (Tex. App.CFort Worth 2006, no pet.); see also Black=s Law Dictionary 308 (8th
ed. 2004) (defining Aconclusory@ as A[e]xpressing a factual
inference without stating the underlying facts on which the inference is based@).





[15]See Tex. R. App. P.
44.1(a)(1) (stating that judgment may not be reversed on appeal unless the
complained of error probably caused the rendition of an improper judgment).





[16]See, e.g., Hussong v. Schwan's
Sales Enters., Inc., 896 S.W.2d 320, 323 (Tex. App.CHouston [1st Dist.] 1995)
(op. on reh'g) (stating that Aa trial court can only consider pleadings and
proof on file at the time of the hearing, or filed after the hearing and before
judgment with the permission of the court@).





[17]See Churchill v. Mayo, 224 S.W.3d 340, 347
(Tex. App.CHouston [1st Dist.] 2006,
pet. denied) (citing former rule 38.1(h) of Texas Rules of Appellate Procedure
and concluding that Mayo presented nothing for review on her objection to an
affidavit as conclusory by failing to identify any particular statement in the
affidavit).





[18]See Ryland Group, Inc. v.
Hood,
924 S.W.2d 120, 122 (Tex. 1996) (stating that a conclusory affidavit does not
raise a fact issue).





[19]See Residential Dynamics, 186 S.W.3d at 198. 





[20]Holy Cross Church of God
in Christ v. Wolf, 44 S.W.3d 562, 568 (Tex. 2001) (quoting Houston First Am. Sav. v.
Musick, 650 S.W.2d 764, 767 (Tex. 1983)). 





[21]Id. at 568 (noting that
judicial admission that is clear and unequivocal has conclusive effect).  





[22]Houston First Am. Sav., 650 S.W.2d at 767
(stating that A[a]ny fact admitted is
conclusively established in the case without the introduction of the pleadings
or presentation of other evidence@).





[23]See Couch v. Southern
Methodist Univ., 10 S.W.2d 973, 974 (Tex. Com. App.1928, judgm=t adopted) (noting that
contract may include the right to amend the contract but the right Aimplies only those
changes contemplating a correction, improvement, or reformation of the
agreement rather than a complete destruction of it@). 





[24]See Tex. R. Civ. P. 94
(requiring a party to affirmatively plead the affirmative defense of duress); Brownlee
v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984) (stating that when Athe party opposing a
summary judgment relies on an affirmative defense, he must come forward with
summary judgment evidence sufficient to raise an issue of fact on each element
of the defense to avoid summary judgment@).





[25]See City of Houston v.
Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).





[26]See Clear Creek Basin, 589 S.W.2d at 678; Brownlee,
665 S.W.2d at 112.





[27]See Hussong, 896 S.W.2d at 323.





[28]See Tesoro Petroleum
Corp. v. Nabors Drilling USA, Inc., 106 S.W.3d 118, 124 (Tex. App.CHouston [1st Dist.] 2002,
pet. denied) (noting that a plaintiff moving for summary judgment has no
obligation to negate the defendant=s affirmative defenses); see also Barrand,
Inc. v. Whataburger, Inc., 214 S.W.3d 122, 143 (Tex. App.CCorpus Christi 2006, pet.
denied) (stating that Whataburger had no burden to address the defendant=s affirmative defenses in
moving for summary judgment).





[29]See Brownlee, 665 S.W.2d at 112. 





[30]See Malooly Bros., Inc.
v. Napier,
461 S.W.2d 119, 121 (Tex. 1970) (holding that summary judgment must stand since
it may have been based on a ground not specifically challenged on appeal);
see also Haire v. Nathan Watson Co., 221 S.W.3d 293, 301B02 (Tex. App.CFort Worth 2007, no pet.)
(affirming summary judgment on unchallenged ground); Long v. Long, 196
S.W.3d 460, 468B69 (Tex. App.CDallas 2006, no pet.)
(holding that an appellate court must affirm trial court=s judgment if a separate
and independent ground supporting it is not challenged on appeal); Shelton
v. Sargent, 144 S.W.3d 113, 129 (Tex. App.CFort Worth 2004, pet.
denied) (affirming summary judgment on unchallenged ground).





[31]Baylor Univ. v.
Sonnichsen,
221 S.W.3d 632, 635 (Tex. 2007) (noting that trial court need not give pleader
opportunity to amend pleading when the pleading defect is of a type that cannot
be cured by amendment).